**RUSS AUGUST & KABAT**
Marc A. Fenster, SBN 181067
Ben Wang, SBN 228712
Andrew D. Weiss, SBN 232974
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tel:  (310) 826-7474
Fax:  (310) 826-6991
Email:  mfenster@raklaw.com
Email:  bwang@raklaw.com
Email:  aweiss@raklaw.com

Attorneys for Plaintiff
*SPEX Technologies, Inc.*

RUSS, AUGUST & KABAT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SPEX TECHNOLOGIES, INC.,<br><br>                Plaintiff<br><br>v.<br><br>APRICORN,<br><br>                Defendant. | Case No. 2:16-CV-07349-JVS (ARGx)<br><br>**PLAINTIFF SPEX TECHNOLOGIES, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR INVALIDITY OF THE ASSERTED PATENT CLAIMS UNDER 35 U.S.C. § 101**<br><br>Time:  1:30 p.m.<br>Date:  January 9, 2017<br>Courtroom:  10C<br>Before:  The Hon. James V. Selna |

SPEX'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

## TABLE OF CONTENTS

I.  INTRODUCTION. ....................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND. ................................ 2

III.  LEGAL STANDARD. ............................................................... 4

    A.  Patent-Eligible Subject Matter Under §101. .......................... 4

    B.  Motions to Dismiss Under Rule 12(b)(6). .............................. 7

IV.  ARGUMENT. ............................................................................ 7

    A.  *Alice* Step 1: The Patents-in-Suit Claim Patentable Subject Matter Because They Are Not Directed To An Abstract Idea. ................................................ 8

        1.  The Patents-in-Suit Are Directed To Specific Hardware, Not The Oversimplified Abstract Idea Of "Securing Secret Information." ......... 8

        2.  Under *Enfish* And Its Progeny, The Claims Are Directed To An Improvement Of Computer Technology And Therefore Are Not Directed To An Abstract Idea. .............................................. 12

    B.  *Alice* Step 2: The Specific Arrangement Of The Components In The Claims Illustrate That The Claims Include An Inventive Concept And Do Not Preempt The Alleged Abstract Ideas. ............................... 17

    C.  Claim Construction Is Important To Determining The Scope Of The Claims. ............................................................ 21

    D.  Defendant's Summary Treatment Of Claims Other Than Claim 11 Of The '802 Patent Dooms Defendant's Motion. ....................... 21

V.  CONCLUSION. ...................................................................... 23

RUSS, AUGUST & KABAT

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S.Ct. 2347 (2010)..................................................................passim

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
    Case No. 2:15cv478, 2016 WL 3670804 (E.D. Va. Jul. 5, 2016) ...............11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).......................................................................................7

*Ass'n for Molecular Pathology v. Myriad Genetics,*
    133 S.Ct. 2107 (2013).....................................................................................4

*Avago Techs. Gen. IP (Singapore) PTE LTD. v. Asustek Computer, Inc.,*
    Case Nos. 15-cv-4525, 15-cv-451, 2016 WL 1623920 (N.D. Cal. Apr. 25,
    2016) .............................................................................................................15

*Bascom Global Internet Servs., Inc. v. AT&T Mobility, LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ..........................................................6, 7, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................7

*Bilski v. Kappos,*
    561 U.S. 593 (2010).................................................................................4, 19

*Cronos Techs., Inc. v. Expedia, Inc.,*
    Case No. 13-1538-LPS, 2015 WL 5234040 (D. Del. Sep. 8, 2015).........9, 23

*DDR Holdings LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................6, 18

*Diamond v. Chakrabarty,*
    447 U.S. 303 (1980).......................................................................................4

*Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.,*
    758 F.3d 1344 (Fed. Cir. 2014) ...................................................................20

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ...........................................................passim

*Gottschalk v. Benson,*
    409 U.S. 63 (1972).........................................................................................5

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542 (9th Cir. 1990) ......................................................................7

*Intellectual Ventures I LLC v. Symantec Corp.,*
    838 F.3d 1307 (Fed. Cir. 2016) ...................................................................17

ii

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
  Case No. 13-cv-3777 (AKH), 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015)
  ................................................................................................................12

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ....................................................................5

*Iron Gate Sec., Inc. v. Lowe's Cos., Inc.*,
  Case No. 15-cv-8814, 2016 WL 4146140 (S.D.N.Y. Aug. 3, 2016)......15, 18

*JDS Techs., Inc. v. Exacq Techs.*,
  Case No. 15-10387, 2016 WL 3165724 (E.D. Mich. Jun. 7, 2016) .............15

*Kinglite Holdings Inc. v. Micro-Star Int'l Co.*,
  Case No. CV 14-03009 JVS (PJWx), 2015 WL 6437836 (C.D. Cal. Oct. 16,
  2015) ............................................................................................................12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S.Ct. 1289 (2012)....................................................................................5

*McRO, Inc. v. Bandai Namco Games America Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ........................................................10, 11, 20

*Network Congestion Solutions, LLC v. U.S. Cellular Corp.*,
  Case Nos. 14-903, 14-904, 2016 WL 1129210 (D. Del. Mar. 22, 2016) .....15

*Parus Holdings, Inc. v. Sallie Mae Bank*,
  137 F. Supp. 3d 660 (D. Del. 2015)..............................................................20

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
  827 F.3d 1042 (Fed. Cir. 2016) ....................................................................20

*Secure Mail Solutions LLC v. Universal Wilde, Inc.*,
  169 F. Supp. 3d 1039 (C.D. Cal. 2016) ........................................................20

*Verint Sys., Inc. v. Red Box Recorders Ltd.*,
  Case No. 14-cv-5403 (KBF), 2016 WL 7156768
  (S.D.N.Y. Dec. 7, 2016) ......................................................................6, 10, 11

*Walker Digital, LLC v. Google, Inc.*,
  66 F. Supp. 3d 501 (D. Del. 2014)................................................................12

**Statutes**

35 U.S.C. §101 ...................................................................................passim

**Rules**

Fed. Civ. R. Proc., Rule 12 ...................................................................7

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

## I.     __INTRODUCTION.__

Over the past few years, it has become common place to begin a patent litigation by challenging the validity of the patent under 35 U.S.C. §101 ("§101"). The challenges usually apply to software patents implemented on generic computers. U.S. Patent No. 6,088,802 (the "'802 patent") and U.S. Patent No. 6,003,135 (the "'135 patent") (collectively, the "patents-in-suit") do not claim software implemented on a generic computer. Instead, the claimed technologies are variations of a peripheral device (the '802 patent) and a modular device (the '135 patent) that secures the flow of data between a computer and the functionality of the device, such as storage. The claimed technologies are central to the functionality of modern, hardware encryption devices such as encrypting USB flash drives or hard drives.

The Motion must be rejected because the claims of the patents-in-suit claim patentable subject matter under §101. The claims are directed to specific, concrete devices, not an abstract idea. For example, the peripheral device claimed by claim 11 of the '802 patent has five specific hardware components: (1) a security means (*e.g.*, a hardware encryption chip); (2) a target means (*e.g.*, a hard drive or flash drive); (3) an internal communication means (*e.g.*, a computer bus); (4) an external communication means (*e.g.*, a USB or SATA connection); and (5) a mediating means (*e.g.*, hardware the ensures that data passes through the security means). The claims are directed to concrete machines, not abstract ideas. Furthermore, the claims are directed to an improvement in computer technology (*i.e.*, improved security on flow of data between a host computer and attached hardware) and, consistent with *Enfish* and its progeny, are therefore not directed to abstract ideas.

Even if the claims are deemed to be directed to Defendant's alleged abstract idea of "securing secret information," the claims are patentable under *Alice* step 2 because of the concrete additional limitations included in the claims. The hardware limitations of the claims, such as the mediating means, security mean and target

1

SPEX'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

means, are a substantial inventive concept well beyond the alleged abstract idea. This is particularly true when the combination of elements in the claims is considered as whole.

Defendant fails to engage in the disciplined analysis required by the controlling case law. Instead, Defendant overly simplifies the claims to create abstraction where none exists and ignores the actual claims and controlling law. Defendant's lack of factual and legal support does not meet Defendant's burden to clearly establish that the claims of the patents-in-suit are invalid under §101. The Motion must therefore be denied.

## II.   **RELEVANT FACTUAL BACKGROUND.**

SPEX filed this action against Defendant on September 28, 2016. D.I. 1.

The patents-in-suit were filed on June 4, 1997 as independent, co-owned applications. D.I. 1-1, 1-2. Though the claimed technology is somewhat different, the patents-in-suit solved the same problem. At the time of the inventions, computers were becoming "increasing portable" and required "more portable peripheral devices." D.I. 1-1 at 1:30-35. These portable devices were "more susceptible to security breaches." *Id.* at 1:39-46. Prior art attempts to address these security breaches suffered from serious deficiencies such as untrusted host hardware (*id.* at 1:52-2:21) or a failure to route all necessary data through a peripheral security device (*id.* at 2:22-67).

The patents-in-suit address the deficiencies of the prior art by enabling, in a single peripheral or modular device, "performance of one or more security operations on data, and a defined interaction with a host computing device that has not previously been integrated with security operations in a single integral device." *Id.* at 3:17-36. Importantly, the novel technology was implemented "so that the security operations are performed in-line, i.e., the security operations are performed between the communication of data to or from the host computer device and the performance of the defined interaction" and "the security functionality of

RUSS, AUGUST & KABAT

the peripheral device is transparent to the host computer device." *Id.* at 3:40-48. The advantages of the invention overcome the problems of the prior art by eliminating the risk that data will not be transferred properly. *Id.* at 3:59-4:10.

Among other things, the claims of the patents-in-suit reflect specific hardware implementing the invented technology. For example, claim 11 of the '802 patent claims a specific peripheral device:

> 11. A peripheral device, comprising:
>
> security means for enabling one or more security operations to be performed on data;
>
> target means for enabling a defined interaction with a host computing device;
>
> means for enabling communication between the security means and the target means;
>
> means for enabling communication with a host computing device; and
>
> means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means.

D.I. 1-1. The hardware and how it operates is discussed with further specificity in the '802 patent. *E.g.*, D.I. 1-1 at Fig. 8, 15:42-18:47. Claim 16 of the '135 patent also describes specific hardware implementing the invented technology. In particular, the claim is directed to a hardware modular device for implementing the invention:

> 16.  A modular device, comprising:
>
> a security module, comprising:
>
> means for enabling one or more security operations to be performed on data;
>
> means for communicating with a target module; and
>
> means for communicated with a host computing device;

3

RUSS, AUGUST & KABAT

a target module, comprising:

> means for enabling a defined interaction with a host computing device; and

> means for communicating with a security module; and

> means for operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device;

> wherein communication between the target module and the host computing device must first pass through the security module.

D.I. 1-2.  The hardware and how it operates is discussed with further specificity in the '135 patent. *E.g.*, D.I. 1-2 at 18:65-22:9.

## III.   LEGAL STANDARD.

### A.   Patent-Eligible Subject Matter Under §101.

Section 101 of the Patent Act **broadly** defines patentable subject matter: "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." "Congress took this permissive approach to patent eligibility to ensure that 'ingenuity should receive liberal encouragement.'" *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)).

There are three **narrow** exceptions to §101's broad patent-eligibility principles: laws of nature, physical phenomena, and abstract ideas. *Bilski*, 561 U.S. at 594. The concern that drives the need for the exceptions is preemption. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2010). The exceptions protect the "basic tools of scientific and technological work." *Id.* (quoting *Ass'n for Molecular Pathology v. Myriad Genetics*, 133 S.Ct. 2107, 2116 (2013)). Therefore, allowing for the patenting of exempted subject matter might impede innovation more than it promotes it. *Id.* (citing *Mayo Collaborative Servs. v. Prometheus*

RUSS, AUGUST & KABAT

1  *Labs., Inc.* 132 S.Ct. 1289, 1923 (2012)).

2      The Supreme Court has warned, however, that interpreting the exceptions

3  too broadly could "swallow all of patent law," as "all inventions at some level

4  embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or

5  abstract ideas." *Alice*, 134 S.Ct. at 2354. Applications of excluded subject matter

6  such as abstract ideas remain patentable subject matter. *Id.* (citing *Gottschalk v.*

7  *Benson*, 409 U.S. 63, 67 (1972)).

8      In *Alice*, the Supreme Court articulated a two-step analysis for determining

9  patent eligibility under §101. *Alice*, 134 S.Ct. at 2355. First, the court must

10 determine "whether the claims at issue are ***directed to*** [a] patent-ineligible

11 concept," such as an abstract idea. *Id.* (emphasis added). Although previously often

12 handled in a summary manner, the Federal Circuit recently emphasized the

13 importance of this step of the analysis: The language used by the Supreme Court to

14 describe the first *Alice* step "plainly contemplates that the first step of the inquiry is

15 a meaningful one, i.e., that a substantial class of claims are ***not*** directed to a patent-

16 ineligible concept." *Enfish, LLC v. Microsoft Corp., et al.*, 822 F.3d 1327, 1334

17 (Fed. Cir. 2016) (emphasis in original). It is not enough for claims to "***involve*** a

18 patent-ineligible concept" because virtually all claims would then meet the first

19 step. *Id.* (emphasis in original). "Rather, the 'directed to' inquiry applies a stage-one

20 filter to claims, considered in light of the specification, based on whether 'their

21 character as a whole is directed to excluded subject matter.'" *Id.* at 1335 (quoting

22 *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir.

23 2015)). In the context of a software patent, "the first step in the *Alice* inquiry…asks

24 whether the focus of the claims is on the specific asserted improvement in

25 computer capabilities…or, instead, on a process that qualifies as an 'abstract idea'

26 for which computers are invoked merely as a tool." *Id.* at 1335-36.

27     Judge Forrest of the Southern District of New York recently warned against

28 another danger in determining whether a claim is directed to an abstract idea:

RUSS, AUGUST & KABAT

5

"reductionist simplicity." *Verint Sys., Inc. v. Red Box Recorders Ltd.*, Case No. 14-cv-5403 (KBF), 2016 WL 7156768 (S.D.N.Y. Dec. 7, 2016). The danger of reductionist simplicity is that that "virtually any invention could be described as simply addressing that which others long ago addressed." *Id.* at *1. However, "[p]atent law protects the builder of a better mousetrap, even if his or her invention could be described as, simply, a mousetrap." *Id.* at *1; *see also Enfish*, 822 F.3d at 1337 ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule"). In other words, just because a claim can be simplified to a point where an abstract idea can be identified does not mean that the claim is ***directed*** to that abstract idea.

If the claims are directed to an abstract idea, the second step of the *Alice* analysis calls for the court to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether [the claims contain] an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself.'" *Alice*, 134 S.Ct. at 2355. This is the step that addresses whether the claims preempt the excluded subject matter or are an application of the excluded subject matter. *Id.* at 2358. For example, an invention that "improve[s] an existing technological process" or "solve[s] a technological problem in 'conventional industry practice'" is an application of excluded subject matter and would therefore be patentable subject matter. *Id.* at 2358-59; *see also, e.g.*, *DDR Holdings LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (finding claims patentable where they were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"). The Federal Circuit has recently emphasized that Defendants cannot prevail on this step by only showing that individual claim elements are conventional. *Bascom Global Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016).

RUSS, AUGUST & KABAT

6

Even where individual elements are conventional technologies, the specific claimed arrangement of conventional technologies could also form the inventive concept. *Id.* ("an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces").

### B.  Motions to Dismiss Under Rule 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewing them in the light most favorable to the plaintiffs, well-plead factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).

Dismissal is appropriate only where the moving party "***clearly*** establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach*, 896 F.2d at 1550 (emphasis added).

## IV.  ARGUMENT.

The patents-in-suit claim specific machines implementing specific technology. The claims are not directed to an abstract idea. Further, even if the Court finds that the claims are directed to Defendant's proposed abstract idea, the claims include significant additional inventive concepts beyond the abstract idea. The claims of the patents-in-suit therefore satisfy both *Alice* steps. The Motion should be denied.

RUSS, AUGUST & KABAT

**A.**   ___*Alice* Step 1: The Patents-in-Suit Claim Patentable Subject Matter Because They Are Not Directed To An Abstract Idea.___

The claims of the patents-in-suit are directed to specific, concrete machines, not an abstract idea. The claimed machines are the claimed technology, not simply generic vehicles for practicing an abstract idea. Further, the claimed technology is a technological improvement of the computer itself and is not an abstract idea for this reason as well.

**1.**   **The Patents-in-Suit Are Directed To Specific Hardware, Not The Oversimplified Abstract Idea Of "Securing Secret Information."**

The claims of the patents-in-suit are directed to specific machines, not an abstract idea. For example, claim 11 of the '802 patent claims a specific peripheral device (*e.g.*, a device that can attach to a computer via a port or wireless connection). *E.g.*, D.I. 1-1 at 4:52-55. The claimed peripheral device has five specified hardware components: (1) a security means (*e.g.*, a hardware cryptography chip); (2) a target means (*e.g.*, a hard drive or flash drive); (3) an internal communication means (*e.g.*, a computer bus); (4) an external communication means (*e.g.*, a USB or SATA connector); and (5) a mediating means (*e.g.*, hardware the ensures that data passes through the security means). *See, e.g.*, D.I. 1-3 (claim chart providing an example of Defendant's infringement and indicating preliminary claim constructions for each means-plus-function element of claim 11). Claim 16 of the '135 patent[1] claims a modular device with similar hardware component limitations, including a security module with a security means and a target module with a target means and a means for

_____

[1] Although the majority of the claims of the '135 patent are device claims like claim 16, Defendant only refers in any detail to method claim 57. As discussed below, Defendant's failure to address all of the claims of the patents-in-suit is reason enough to deny the Motion.

8

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

connecting the device to a host computer. Claims 1, 6, 23, 24, 36 and 37 of the '802 patent and claims 1, 22, 27, 32 and 36 of the '135 patent claim further variations of the novel hardware. The method claims (claims 38 and 39 of the '802 patent and claims 57 and 58 of the '135 patent) require that the claimed methods be performed using similar specific hardware. *E.g.*, D.I. 1-2 at claim 57 (requiring a "modular device comprising a security module…and a target module"). Indeed, even one of Defendant's formulations of the alleged abstract idea emphasizes the tangible, concrete nature of the claimed technology. Motion at 16 (Defendant argues the abstract idea is "securing access to secret information with a portable device…using a 'security means' and 'target means'"). Accordingly, because the claims are specifically directed to a "machine, manufacture, or composition of matter," the claims are patentable. 35 U.S.C. § 101.

Despite the concrete nature of the claims, Defendant argues that the claims of the patents-in-suit are directed to an abstract idea. Defendant offers three versions of the alleged abstract idea to which the claims are directed: (1) "securing secret information so that access to the secret information is only permitted when authorized" (Motion at 9); (2) "securing access to secret information with a portable device…using a 'security means' and 'target means'" (Motion at 16); and (3) "user authentication (e.g., biometric) for access to encrypted idea" (Motion at 24).[2] Defendant's inability to consistently identify the abstract idea the claims are directed to contradicts Defendant's position that it has properly identified any abstract idea to which the claims are directed. *See, e.g.*, *Cronos Techs., Inc. v. Expedia, Inc.*, Case No. 13-1538-LPS, 2015 WL 5234040, at *3 (D. Del. Sep. 8, 2015) (denying a motion to dismiss where defendants proposed four different

---

[2] Defendant's second formulation is not an abstract idea, as discussed above. Defendant offers no explanation for the basis for its third abstract idea formulation. The claims are not directed to user authentication. Rather, the shifting abstract ideas appear to be a results-oriented effort to manufacture support for Defendant's argument where none exists.

9

abstract ideas). In any event, unless specifically identified otherwise, SPEX addresses Defendant's first formulation of the abstract idea.

Defendant offers little explanation as to how it derived its alleged abstract idea. *See* Motion at 9. It appears that Defendant may have derived the alleged abstract idea from the functional language in the mediating means portion of claim 11. As a preliminary matter, not all the claims of the patents-in-suit contain this limitation, such as claim 16 of the '135 patent. Setting that issue aside, Defendant's proposed abstract idea should be rejected because, though it may identify subject matter that the claim ***involves***, it does not identify the subject matter to which the claims are ***directed***. *Alice*, 134 S.Ct. at 2355. As discussed above, the claims are directed to specific peripheral and modular devices, not only the alleged abstract idea of "securing secret information."

Defendant's identified abstract idea formulation suffers from the "reductionist simplicity" reasoning that Judge Forrest recently cautioned against in *Verint*. 2016 WL 7156768, at *1 ("virtually any invention could be described as simply addressing that which others long ago addressed," "[p]atent law protects the builder of a better mousetrap, even if his or her invention could be described as, simply, a mousetrap"); *see also Enfish*, 822 F.3d at 1337 ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule"); *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("We have previously cautioned that courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims."). "Courts faced with such motions must scrutinize reductive descriptions with great care." *Verint*, 2016 WL 7156768, at *1. Such is the case here. In their zeal to identify an abstract idea, Defendant has reduced the many limitations of the claims of the patents-in-suit into a misleadingly simple abstract idea. Courts, including the Federal Circuit, have rejected this approach to

RUSS, AUGUST & KABAT

10

identifying whether a claim is directed to an abstract idea. *Enfish*, 822 F.3d at 1337; *McRO,* 837 F.3d at 1313; *Verint*, 2016 WL 7156768, at *1. When analyzed properly, the claims, and the specification further describing the claimed technology, show a more complex and specific invention to which the claims are directed.

The factual situation in *Verint* is analogous to the situation here. In *Verint*, the analyzed claims claimed detailed methods of protecting information. *Verint*, 2016 WL 7156768 at *6. Judge Forrest rejected the defendant's argument that the claims were "no more than a method for protecting sensitive information" because the claims detailed a more specific method that was not abstract. *Id.* at *7. Defendant here similarly argues that the patents-in-suit claim nothing more than, effectively, protecting sensitive information. The patents-in-suit, however, claim more than that. For example, claim 11 of the '802 patent claims a specifically-configured peripheral device that includes a number of hardware limitations, including a security means, target means and mediating means that controls the flow of data between the host computer, security means and target means. Claim 16 of the '135 patent similarly claims a modular device with a number of specific hardware limitations, including a security module and target module.

The difference between the claims of the patents-in-suit and claims often found to be directed to an abstract idea is exemplified in the cases cited by Defendant. For example, in *Asghari-Kamrani v. United Servs. Auto. Ass'n*, Case No. 2:15cv478, 2016 WL 3670804 (E.D. Va. Jul. 5, 2016), the representative claim was a software method for a particular authentication method using a third party and a dynamic code. *Id.* at *2, *4. The method was tied to use in a generic computer and did not claim specific hardware or improvements to computer technology itself. The other cases relied on by Defendant similarly consider software method claims implemented on generic computer hardware. *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, Case No. 13-cv-3777 (AKH), 2015

11

SPEX'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WL 1941331, at *41 (S.D.N.Y. Apr. 28, 2015) (software method of encrypting, distributing and controlling access based on unspecified rules); *Kinglite Holdings Inc. v. Micro-Star Int'l Co.*, Case No. CV 14-03009 JVS (PJWx), 2015 WL 6437836, at *8 (C.D. Cal. Oct. 16, 2015) (analyzing software method claims that invoke use of a particular service for authentication); *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 512-13 (D. Del. 2014) (addressing software method claims for the release of information pursuant to unspecified rules). Conversely, here, the majority of the claims of the patents-in-suit are device claims directed to specific computer hardware. The few method claims of the patents-in-suit are also not bare software method claims to be performed by generic computer hardware. Rather, the method claims include specific hardware limitations, such as the limitation of claim 57 of the '135 patent that the method be performed by a modular device with security and target modules.  D.I. 1-1 at claims 38, 39; D.I. 1-2 at claims 57, 58.

> **2.     Under *Enfish* And Its Progeny, The Claims Are Directed To An Improvement Of Computer Technology And Therefore Are Not Directed To An Abstract Idea.**

Inventions that are directed to an improvement of computer technology itself are not abstract ideas. *E.g.*, *Enfish*, 822 F.3d at 1335-36. *Enfish* and its progeny provide further support for rejecting Defendant's argument. The claims of the patents-in-suit improve computer technology by improving the security of the flow of data between a host computer and attached devices. The claimed devices and methods are a specific, concrete improvement to computer technology as it existed in 1997, when the patents-in-suit were filed. As computers became "increasing portable," they became "more susceptible to security breaches." D.I. 1-1 at 1:30-46. For example, it became increasingly likely that, despite the desire to protect sensitive data on the computer, the security measures could be circumvented,

12

whether intentional or not. The patents-in-suit addressed this computer-specific problem[3] by, among other things, claiming technology "so that the security operations are performed in-line, i.e., the security operations are performed between the communication of data to or from the host computer device and the performance of the defined interaction" and "the security functionality of the peripheral device is transparent to the host computer device." *Id.* at 3:40-48. The advantages of the invention overcome the problems of the prior art by eliminating the risk that data would not be subject to the desired security functionality. *Id.* at 3:59-4:10. The claims of the patents-in-suit are therefore directed to patentable subject matter and are not invalid under §101. *See, e.g.*, *Enfish*, 822 F.3d at 1335.

The recent Federal Circuit decision in *Enfish* is analogous to the factual situation here. In *Enfish*, the patents-at-issue were "directed to an innovative logical model for a computer database." 822 F.3d at 1329. The *Enfish* patents used a self-referential database model, where all information was stored in a single table, as opposed to a relational database model. *Id.* at 1330-32. The technique used by the patents had multiple benefits, including allowing for faster searching. *Id.* at 1333. Claim 17 from one of the *Enfish* patents reads:

A data storage and retrieval system for a computer memory, comprising:

means for configuring said memory according to a logical table, said logical table including:

a plurality of logical rows, each said logical row including an object identification number (OID) to identify each

---

[3] This problem does not have a non-computer analog. Data is generated, received and recorded by a computer at very high rate of speed. A computer user has no way of determining if the security measures are being implemented or being circumvented by malicious hardware or software. Conversely, when information is exchanged among humans, such as during the Revolutionary War as cited by Defendant, the slow rate of exchange allows the information owner to ensure all security measures are complied with.

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

said logical row, each said logical row corresponding to a record of information;

a plurality of logical columns intersecting said plurality of logical rows to define a plurality of logical cells, each said logical column including an OID to identify each said logical column; and

means for indexing data stored in said table.

*Id.* at 1336. Unlike here, where the means-plus-function claim elements correspond to hardware means, "means for configuring" was construed as a four-step software algorithm, including steps for creating a logical table, assigning each row and column an identification number, and storing and accessing data. *Id.* at 1336-37. The district court granted summary judgment of invalidity pursuant to §101 as to all claims because they were directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table." *Id.* at 1333-34, 1337.

The Federal Circuit reversed the district court. *Id.* at 1339. The Federal Circuit held that the *Alice* step one analysis "asks whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a computer database) or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335-36. The Federal Circuit noted that, in previous post-*Alice* cases, it was obvious that the claims were of the latter type and required analysis of *Alice* step 2. *Id.* at 1336. In the *Enfish* patents, "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.* The Federal Circuit rejected the district court's analysis because it described the "claims at such a high level of abstraction and untethered from the language of the claims" that the exceptions of §101 swallowed the rule. *Id.* at 1337. The district court's analysis oversimplified the invention and "downplayed the invention's benefits." *Id.* at 1338.

SPEX'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The *Enfish* analysis has been adopted by numerous district courts to reject §101 motions similar to this Motion. *See, e.g.*, *Klaustech, Inc. v. Admob, Inc.*, Case No. C 10-5899, 2015 WL 10791915, at *3 (N.D. Cal. Aug. 31, 2015) ("The Court finds…that the Patent addresses a technological improvement specific to Internet-related advertising. The '651 Patent employs a new approach to control and monitor the display of advertisement on Internet browsers and seeks to solve technical problems that do not exist in the conventional advertising realm."); *Avago Techs. Gen. IP (Singapore) PTE LTD. v. Asustek Computer, Inc.*, Case Nos. 15-cv-4525, 15-cv-451, 2016 WL 1623920, at *6 (N.D. Cal. Apr. 25, 2016) (denying motion because "the Court concludes that the purpose of the claims at issue is to decompress digital video using a single memory"); *Iron Gate Sec., Inc. v. Lowe's Cos., Inc.*, Case No. 15-cv-8814, 2016 WL 4146140, at *11-12 (S.D.N.Y. Aug. 3, 2016) (Judge Forrest distinguishes defendant's high level representation of claims; "it is clear that the '693 Patent is directed to particular improvements over prior art multimedia data indexing techniques that render such data accessible in real time"); *Network Congestion Solutions, LLC v. U.S. Cellular Corp.*, Case Nos. 14-903, 14-904, 2016 WL 1129210, at *8 (D. Del. Mar. 22, 2016) (finding step 1 satisfied where the claims were "directed to 'alleviating congestion in a communication network' and recite steps used to perform the method for a flow of data to and from end user devices connected to a network through communication devices."); *JDS Techs, Inc. v. Exacq Techs.*, Case No. 15-10387, 2016 WL 3165724, at *7 (E.D. Mich. Jun. 7, 2016) (a patent for "querying external camera devices to extract an embedded unique identifier (the MAC address) and then validating the unique identifier for software" is not abstract because "[t]he technological solution presented is inexorably tied to computer technology").

In support of its reversal in *Enfish*, the Federal Circuit pointed to a number of facts, including that (a) the claims were not directed to any form of storing data

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

in a table; (b) the specification differentiated the *Enfish* inventions from conventional techniques at the time; and (c) the specification disclosed the benefits of the invention over the prior art techniques. *Enfish*, 822 F.3d at 1337. These factors are similarly found in the patents-in-suit. The claims are not directed to all forms of the abstract idea "securing secret information so that access to the secret information is only permitted when authorized." For example, one could "secure secret information" using software cryptographic only, rather than hardware means. Devices that lack a hardware cryptographic chip would not practice independent claims 1, 6, 11, 23, 24, 36 and 37 of the '802 patent and independent claims 1, 16, 22, 27, 32 and 38. Indeed, there are a number of devices today that use only software-based cryptographic security and cannot infringe these claims. The specifications of the patents-in-suit also distinguish the claimed inventions from the prior art, including the fact that the inventions enable transparent, seamless in-line security functionality. *E.g.*, D.I. 1-1 at 3:40-4:10. Finally, the specifications of the patents-in-suit disclose the benefits of the claimed inventions, including superior security functionality and seamless operation. *E.g.*, *id.* at 3:59-4:10. Like in *Enfish*, the focus of the claims of the patents-in-suit is in improving computer technology, not in using a computer as a tool to implement an otherwise abstract idea.

Defendant argues that *Enfish* and its progeny do not apply because "the user authentication (e.g., biometric) for access to encrypted data in the Asserted Patents is similar to long-prevalent, abstract practices." Motion at 24. Defendant's argument fails because the claims of the patents-in-suit are not directed to user authentication. Defendant offers no explanation for its characterization of the claims, which is different than the characterizations it relies on earlier in its Motion. In any event, as discussed above, the claims of the patents-in-suit are directed to novel devices, not user authentication.

Defendant argues that this case is similar to *Intellectual Ventures I LLC v.*

16

*Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016). Motion at 24. Defendant argues that the claims of the patents-in-suit are like the following claim considered by the Federal Circuit in *Symantec*:

> 9. A method for identifying characteristics of data files, comprising:
>
> receiving, on a processing system, file content identifiers for data files from a plurality of file content identifier generator agents, each agent provided on a source system and creating file content IDs using a mathematical algorithm, via a network;
>
> determining, on the processing system, whether each received content identifier matches a characteristic of other identifiers; and
>
> outputting, to at least one of the source systems responsive to a request from said source system, an indication of the characteristic of the data file based on said step of determining.

*Symantec*, 838 F.3d at 1313.[4] Defendant's argument is not persuasive. The Intellectual Ventures claim is a high-level software method claim that the Federal Circuit described as "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization." *Id.* Here, as described above, the claims of the patents-in-suit are directed to specific hardware devices that improve the functionality of the computer itself (*e.g.*, computer hardware that improves the security of the flow of data between a host computer and attached devices). The claims are not analogous.

Accordingly, the claims of the patents-in-suit are not directed to an abstract idea. Defendant has not satisfied its burden that *Alice* step one has been satisfied.

**B.** **_Alice_ Step 2: The Specific Arrangement Of The Components In The Claims Illustrate That The Claims Include An Inventive Concept And Do Not Preempt The Alleged Abstract Ideas.**

If the Court finds that the claims of the patents-in-suit are directed to Defendant's abstract idea, the patents-in-suit still claim patentable subject matter

---

[4] Defendant cites to pages 1359 and 1357 of the *Symantec* opinion. Motion at 24. Neither page exists in the opinion. It appears that Defendant intended to cite to the discussion of Intellectual Venture's '050 patent on pages 1313 through 1315.

17

RUSS, AUGUST & KABAT

under *Alice* step 2 because, when analyzed as a whole, they include an inventive concept and do not preempt the purposed abstract idea identified by Defendant.

The claims of the patents-in-suit are patentable under *Alice* step 2 for the same reasons that they are patentable under *Alice* step 1. *See Iron Gate*, 2016 WL 4146140, at *13 n.10 (Judge Forrest noting that "if not in most others, the questions that bear on each of the two steps have significant overlap."). The technology claimed in the patents-in-suit improve computer technology (*e.g.*, computer hardware that improves the security of the flow of data between a host computer and attached devices). Indeed, both the specification and claims expressly set forth the goal of improving computer technology itself. *E.g.*, D.I. 1-1 at 3:40-4:10. Under both Supreme Court and Federal Circuit precedent, claims that purport to improve computer technology satisfy step 2. *Alice*, 134 S. Ct. at 2359 (the *Alice* were unpatentable because they did not "purport to improve the functionality of the computer itself"); *DDR*, 773 F.3d at 1257 (finding that the claims at issue satisfied *Alice* step 2 because "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"); *see also Iron Gate*, 2016 WL 4146140, at *13-14 (relying on the specification's stated purpose and improvement over prior computer technology to be sufficient to satisfy *Alice* step 2).

Additionally, when considered as a whole, the claims of the patents-in-suit contain an inventive concept beyond Defendant's identified abstract idea of "securing secret information so that access to the secret information is only permitted when authorized." For example, the inventive concept in claim 11 of the '802 patent includes a novel combination of security means, target means, two types of communications means and a mediating means. D.I. 1-1. Claim 16 of the '135 patent similarly includes a number of specific, hardware-based limitations beyond the alleged abstract idea of "securing secret information." D.I. 1-2. Like the claims analyzed approvingly by the Federal Circuit in *Bascom*, the combination of

limitations in the claims include limitations well beyond the abstract idea and therefore contain an inventive concept. *Bascom*, 827 F.3d at 1350 (rather than reciting "the abstract idea of filtering content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components," the claims combined the benefits of two existing, unique content filters in a way that "improve[d] an existing technological process").

Further evidence that the claims of the patents-in-suit include an inventive concept is the fact that the claims satisfy the machine-or-transformation test. While not controlling, the machine-or-transformation test is a "useful and important clue" for determining patent eligibility. *Bilski*, 130 S.Ct. at 3227. As discussed above, the patents-in-suit claim variations of peripheral and modular devices, which satisfy the machine prong of the machine-or-transformation test.

Defendant argues that the patents-in-suit do not include an inventive concept because they refer to "conventional hardware and software components and data to implement the abstract idea." Motion at 15. Defendant's argument fails. Defendant's cited evidence does not support its argument. For example, Defendant has provided no evidence that the mediating means required in the claims is a "conventional hardware and software component." None of the passages cited by Defendant teach that the mediation means is conventional. *See* D.I. 1-1 at 6:40-45 (not referring to the mediation means); 16:39-43 (describing the mediation means but not disclosing that it is "conventional"). Defendant has also failed to address the inventiveness of the ordered combination of elements as recently emphasized by the Federal Circuit. *Bascom*, 827 F.3d at 1350. Even if all of the claim elements are conventional, the combination of the elements is not conventional. *See id.* Defendant appears to oppose this argument by arguing that "combining the portable device and security device…does not impart patent eligibility." Motion at 17. This argument is irrelevant because it addresses a single statement in the specification rather than the ordered combination of limitations in the claims.

RUSS, AUGUST & KABAT

Defendant has presented no evidence that the combination of elements claimed in the patents-in-suit was conventional at the time of the invention.[5]

The patentability of the claims of the patent-in-suit is further emphasized by the lack of preemption of the alleged abstract idea. While it may not be controlling, preemption should be considered when consideration *Alice* step 2. *See, e.g.*, *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1052 (Fed. Cir. 2016) ("while pre-emption is not the test for determining patent-eligibility…it is certainly the 'concern that undergirds…§ 101 jurisprudence'); *Alice*, 134 S.Ct. at 2358; *see also McRO*, 837 F.3d at 1314 ("The preemption concern arises when the claims are not directed to a specific invention…. The abstract idea exception has been applied to prevent patenting of claims that abstractly cover results where 'it matters not by what process or machinery the result is accomplished.'"). Even limiting the context to computer inventions, there are numerous ways the abstract idea of "securing secret information" could be practiced without infringing the patents-in-suit. For example, the security functionality could be (and is in many non-accused products) implemented in software rather than hardware. Such a device would not meet the security means limitation of the claims of the patents-in-suit. As another example, devices without mediating means, such as those in the prior art, would not practice a number of the claims.

After improperly denying the importance of preemption, Defendant argues that the claimed technologies of "encryption, decryption and bio-metric authentication" are conventional and the patents-in-suit fail "to offer any

---

[5] The case law cited by Defendant is similarly inapposite. *Secure Mail Solutions LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039, 1053 (C.D. Cal. 2016) and *Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) address claims that abstractly combine data into different data. The combination of data into different data is not the inventive concept here. With respect to the Defendant's third case, Defendant does not properly describe the finding in *Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660 (D. Del. 2015) . In *Parus*, the court rejected plaintiff's limiting characterization of the claims because it was not supported by the claims themselves. *Id.* at 674. When looking at the claims, there was a significant risk of preemption. *Id.* The claims here do not have such concerns, as discussed below.

20

SPEX'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

meaningful limitation." Motion at 25. As described above, the patents-in-suit do not broadly claim "encryption, decryption and bio-metric authentication." The claimed technology is variations of specific peripheral and modular devices. The claims do not preempt the entire filed of "securing secret information" and there is therefore no risk of preemption.

Accordingly, even if the claims of the patents-in-suit are directed to an abstract idea, the claims contain a sufficient inventive concept to overcome a finding of invalidity pursuant to §101.

**C.   Claim Construction Is Important To Determining The Scope Of The Claims.**

Defendant argues that "[n]othing in the specification or any resulting claim construction can save" the claims of the patents-in-suit "because the specification only describes well-known, conventional computing technologies." Motion at 18. It is unclear how Defendant draws its conclusions without offering any corresponding structures to the means-plus-function elements of the patents-in-suit. For example, Defendant asserts that the mediating means of claims 11 of the '802 patent is "conventional" but never identifies what the alleged conventional corresponding structure is or how the structure is conventional technology. As discussed above, under the construction currently proposed by SPEX and supported by the specification, there is no evidence that the mediating means is conventional technology used in a conventional way. Presumably, Defendant has a different claim construction for this term that supports its argument. These competing constructions are important to the resolution of this Motion and, if the Court is inclined to grant Defendant's Motion, claim construction should proceed before the Court rules on this Motion.

**D.   Defendant's Summary Treatment Of Claims Other Than Claim 11 Of The '802 Patent Dooms Defendant's Motion.**

Defendant's Motion should also be denied because it fails to sufficiently

21

RUSS, AUGUST & KABAT

analyze all of the claims of the patents-in-suit, particularly the independent claims. Defendant only analyzes claim 11 of the '802 patent in detail (Motion at 9-17). Defendant made little effort, however, to show why claim 11 of the '802 patent is representative of **all** claims of the patents-in-suit. Defendant refers to the other independent claims in a conclusory manner. For example, for claim 57 of the '135 patent, Defendant provides a conclusory chart allegedly showing that claim 57 is the same as claim 11. Motion at 18-19. The analysis of claim 57 ignores the differences between claim 11 and claim 57, such as the differences between a device claim (claim 11) and a method claim (claim 57). *See id*. Other than a conclusory chart, Defendant does not provide even that level of analysis for the other independent claims. Motion at 23 (Defendant only offers a conclusory "table showing the relationship between" the claims). Like claim 57, the other independent claims of the patents-in-suit are different than claim 11 of the '802 patent. For example, below is a chart comparing claim 11 to claim 38 of the '802 patent.

| Claim 11 of '802 Patent | Claim 38 of '802 Patent |
| --- | --- |
| A peripheral device, comprising:<br><br>    security means for enabling one or more security operations to be performed on data;<br><br>    target means for enabling a defined interaction with a host computing device;<br><br>    means for enabling communication between the security means and the target means;<br><br>    means for enabling communication with a host computing device; and<br><br>    means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means. | For use in a peripheral device adapted for communication with a host computing device, performance of one or more security operations on data, and interaction with a host computing device in a defined way, a method comprising the steps of:<br><br>    receiving a request from a host computing device for information regarding the type of the peripheral device; and<br><br>    providing to the host computing device, in response to the request, information regarding the type of the defined interaction. |

As discussed above, claim 11 is directed to a novel peripheral device with five hardware components. Claim 38, on the other hand, is a method claim about how

SPEX'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

RUSS, AUGUST & KABAT

the peripheral device identifies itself to the host computer. Defendant offers no explanation as to why its discussion of claim 11 is representative of claim 38 for the purposes of patentability. Defendant does not address why claim 38 is directed to the alleged abstract idea of "securing secret information." As another example, Defendant does not explain why its arguments regarding peripheral device claim 11 of the '802 patent apply equally to modular device claim 16 of the '135 patent. By analyzing only one claim of the two patents-in-suit, Defendant has not met its burden to show that dismissal is appropriate. *See, e.g.*, *Cronos*, 2015 WL 5234040, at *3 (denying motion to dismiss in part because defendants only provided meaningful analysis of a single claim; "Defendants must provide at least *some* meaningful analysis for *each* of the challenged claims." (emphasis in original)).

## V.   <u>CONCLUSION.</u>

Defendant's Motion must be denied because the claims of the patents-in-suit claim patentable subject matter under both steps of the *Alice* analysis. The claims of the patents-in-suit are directed to concrete machines, not an abstract idea. Even if the patents-in-suit are directed to the abstract idea of "securing secret information," the claims include more than a sufficient inventive concept beyond the abstract idea and there is no risk of preempting the alleged abstract idea. Defendant's Motion must be denied.

Respectfully submitted,

Dated:  December 19, 2016       **RUSS AUGUST & KABAT**

By:   _/s/ Andrew D. Weiss_

Marc A. Fenster, SBN 181067
Ben Wang, SBN 228712
Andrew D. Weiss, SBN 232974
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Tel:  (310) 826-7474
Fax:  (310) 826-6991

RUSS, AUGUST & KABAT

23

Email:  mfenster@raklaw.com
Email:  bwang@raklaw.com
Email:  aweiss@raklaw.com

Attorneys for Plaintiff
SPEX Technologies, Inc.

RUSS, AUGUST & KABAT

24
SPEX'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Civil Rule 5-3.3 and 5.4

Dated: December 19, 2016                    */s/ Andrew D. Weiss*
                                             Andrew D. Weiss

RUSS, AUGUST & KABAT

1