**Spex Technologies Inc. v. Apricorn**
SACV 16-7349 JVS (ARGx)

## Order Regarding Motion to Dismiss

On December 6, 2016, Defendant Apricorn ("Apricorn") moved to dismiss Plaintiff Spex Technologies, Inc.'s ("Spex") complaint.  (Mot., Docket No. 19.)  The Court notified Apricorn of the deficiencies in its filing.  (Ntc., Docket No. 21.)

On December 7, 2016, Apricorn filed a corrected motion.  (Mot., Docket No. 24.)  Spex opposed.  (Opp'n, Docket No. 27.)  Apricorn replied.  (Reply, Docket No. 28.)

For the following reasons, the Court **denies** Apricorn's motion.

### I.  BACKGROUND

Spex sued Apricorn for infringing two patents: (1) United States Patent No. 6,088,802 (the "'802 patent") and (2) United States Patent No. 6,003,135 (the "'135 patent").  (Compl., Docket No. 1.)  The '802 patent is titled "Peripheral Device with Integrated Security Functionality," and the '135 patent is titled "Modular Security Device."  ('802 Patent, Docket No. 1-1; '135 Patent, Docket No. 1-2.)

The patents at issue cover a device and the systems/ methods that occur between that device and a host computer.  The specification of the '135 patent recites the following:

> This invention relates to a modular, typically portable, device (as well as the methods employed by such a modular device, and the systems including such a modular device and host computing device with which the modular device communicates) that can communicate with a host computing device to enable one or more security operations to be performed by the modular device on data stored within the host computing device . . . .

('135 Patent, Docket No. 1-2 at 6:44–53.)  In addition, the specification of the' 802 patent recites the following:

> This invention relates to a peripheral, often portable, device (as well as the methods employed by such a peripheral device, and systems including such a peripheral device and a host computing device with which the peripheral device communicates) that can communicate with a host computing device to enable one or more security operations to be performed by the peripheral device on data stored within the host computing device, data provided from the host computing device to the peripheral device, or data retrieved by the host computing device from the peripheral device.

('802 Patent, Docket No. 1-1 at 1:15–29.)

Spex's complaint does not specify the claims of the patents that Apricorn infringed. (See e.g., id. ¶ 23 ("On information and belief, Defendant has made, used, offered for sale, sold and/or imported into the United States products that infringe *various claims of the '802 patent*, and continues to do so.") (italics supplied).) However, the exemplary charts Spex attached to its complaint address two independent claims: (1) claim 11 of the '802 patent and (2) claim 57 of the '135 patent. (Compl. Ex. C, Docket No. 1-3; Compl., Ex. D, Docket No. 1-4.) Apricorn addresses claim 11 of the '802 patent and claim 57 of the '135 patent in its motion, so the Court will limit its analysis to these two claims. (Mot., Docket No. 24.)

**A.   Claim 11 of the '802 Patent**

Independent claim 11 recites the following:

> A peripheral device, comprising:
>
> security means for enabling one or more security operations to be performed on data;
>
> target means for enabling a defined interaction with a host computing device;
>
> means for enabling communication between the security means and the target means;

>means for enabling communication with a host computing device; and
>
>means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means.

('802 Patent, Docket No. 1-1 at 19:43–56 (alteration to paragraph format).)

**B.     Claim 57 of the '135 Patent**

Independent claim 57 recites the following:

>For use in a modular device adapted for communication with a host computing device, the modular device comprising a security module that is adapted to enable one or more security operations to be performed on data and a target module that is adapted to enable a defined interaction with the host computing device, a method comprising the steps of:
>
>communicating with the host computing device to exchange data between the host computing device and the modular device;
>
>performing one or more security operations and the defined interaction on the exchanged data;
>
>mediating communication of the exchanged data between the host computing device and the modular device so that the exchanged data must first pass through the security module; and
>
>operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device.

('135 Patent, Docket No. 1-2 at 26:34–53 (alterations to paragraph format).)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleaded facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

In resolving a 12(b)(6) motion under Twombly, a court must follow a two-step approach. Id. at 679. First, a court must accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 677. Furthermore, a court must not "accept as true a legal conclusion couched as a factual allegation." Id. at 677–78 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 664. This determination is context-specific, requiring a court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### B. 35 U.S.C. § 101

Under 35 U.S.C. § 101, an invention is patent-eligible if it claims a "new and useful process, machine, manufacture, or composition of matter." However, § 101 has a longstanding, "important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." Assoc. for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013). "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept," but only applications of an abstract concept "to a new and useful end" remain eligible for patent protection. Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014).

The U.S. Supreme Court has set forth a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract

ideas from those that claim patent eligible applications of those concepts." Id. at 2355. First, the Court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." Id. at 2355. If so, then the second step requires the Court to search for an "inventive concept" by considering the elements of each claim—both individually and as an ordered combination—"to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Id. at 2355. If the claims at issue are directed to a patent-ineligible concept and the elements of each claim do not transform it into a patent-eligible application, then the claims are patent-ineligible under 35 U.S.C. § 101. See id. at 2355, 2360.[1]

### III. DISCUSSION

The Court finds that the claims at issue are not directed to a patent-ineligible abstract idea, so the Court will not analyze them under step two.

### A. Applicable Case Law

Under step one of the Alice analysis, a court needs to consider whether a patent claim's "character as a whole" is "directed to" excluded subject matter, such as an abstract idea. See Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015). During this step, a court needs to avoid oversimplifying a patent's claims because, to a certain extent, all inventions are built from abstract ideas. Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1293 (2012). However, the concept of an abstract idea does not have a clear definition, so a court needs to compare the claim at issue with claims in previous cases. See OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362 (Fed. Cir. 2015). The patents' claims at issue in this case are regarding computer-related inventions, and courts have taken different approaches to determining whether these types of claims are abstract ideas. Compare Alice, 134 S. Ct. at 2359, with Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1336 (Fed. Cir. 2016).

The following cases create a distinction between (1) systems or methods that

---

[1] For the remainder of this Order, this two-step analysis will be referred to as the "Alice analysis."

*simply use* a computer and (2) systems or methods that *improve* computer technology.

### 1. Systems or Methods that Simply Use a Computer are Abstract Ideas

For instance, when defining "abstract" some courts have found that mathematical algorithms, including those executed on a generic computer, are abstract ideas. See e.g., Gottschalk v. Benson, 409 U.S. 63, 71–74 (1972); DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1256 (Fed. Cir. 2014).

The court in Digitech Image Techs. LLC v. Elecs. for Imaging, Inc., 758 F.3d 1344, 1348–51 (Fed. Cir. 2014), found that a patent's claim was abstract because it described using a mathematical algorithm to combine two data sets, and that process was not tied to a specific structure or machine. Id. at 1349, 1351. The court held that, without additional limitations, a process using mathematical algorithms to alter existing data is not patent eligible. Id. at 1351.

Similarly, in Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014), the court determined that "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" was an abstract idea. The court asserted that "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." Id.

In addition, the court in In re TLI Communications LLC Patent Litigation, 823 F.3d 607, 613 (Fed. Cir. 2016), determined that the claims at issue were directed to the abstract idea of "classifying and storing digital images in an organized manner." Id. at 613. The court stated that the claims were not directed to a specific improvement in computer functionality because the claims were directed to the "use of conventional or generic technology in a nascent, but well-known environment, without any claim that the invention reflect[ed] an inventive solution to any problem presented by combining the two." Id. at 612.

### 2. Systems or Methods that Improve Computer Technology Are Not Abstract Ideas

In contrast, other courts have found that claiming an improvement in computer capabilities does not always entail claiming an abstract idea. See e.g.,

Enfish 822 F.3d at 1339.

The court in Enfish determined that a logical model for a computer database was not abstract because it was "designed to" improve the way that a computer stores and retrieves data. Id. at 1339. The claims were not regarding general-purpose computers simply performing mathematical equations. Id. Rather, the claims attempted to improve specific computer software. Id. Based on this analysis, the court found that the claims at issue were not directed to an abstract idea. Id. at 1338.

On September 13, 2016, the Federal Circuit issued its decision in McRO, Inc. v. Bandai Namco Games America, 837 F.3d 1299 (Fed. Cir. 2016). The patents at issue were regarding a method for automatically animating the lip synchronization and the facial expression of animated characters. Id. at 1303–04. Through a series of rules, the patents sought to automate a 3-D animator's duties. Id. at 1307. Unlike the claims in Digitech, the claim at issue went beyond simply "organizing [existing] information into a new form" Id. at 1315 (citing Digitech, 758 F.3d at 1351). The claim was limited to achieving automated lip-synchronization of 3-D characters, and it had a computer conduct a task that humans previously performed. Id. at 1316. Therefore, the court determined that the claim was directed to improving automated lip-synchronization, so the claim was not directed to an abstract idea. Id.

### B. The Patents at Issue

#### 1. Claim 11 of the '802 Patent

Apricorn argues that claim 11 is directed to the abstract idea of securing access to secret information, which is a concept that has been practiced throughout modern history by humans. (Mot., Docket No. 25 at 9–12.)

The Court finds that claim 11 is not directed to an abstract idea. Unlike Digitech, claim 11 is tied to a specific structure, which is a peripheral device, and produces a technological improvement. Enfish, 822 F.3d at 1335–36. The invention addresses security problems pertaining to peripheral devices. ('802 Patent, Docket No. 1-1 at 1:38–46, 19:43–56.) That peripheral device contains (1) security means for enabling one or more security operations to be performed on data; (2) target means for enabling a defined interaction with a host computing

device; (3) means for enabling communication between the security means and the target means; (4) means for enabling communication with a host computing device; and (5) means for mediating communication of data between the host computing device and the target means.  Id.  Therefore, claim 11 describes a physical structure that contains a combination of components, not a method or system that uses a general computer to secure access to secret information.  In conclusion, claim 11 is not directed to an abstract idea.[2]  Enfish, 822 F.3d at 1335–36.

2. Claim 57 of the '135 Patent

Apricorn argues that claim 57 suffers from the same eligibility shortcomings as asserted claim 11 of the '802 patent.  (Mot., Docket No. 25 at 18.)

However, the Court finds that claim 57 is not directed to an abstract idea. The preamble of the claim describes a series of steps that a modular device can use with a host computing device.  ('135 Patent, Docket No. 1-2 at 26:34–41.) However, although a machine performs the steps in claim 57, the steps occur "to enable one or more security operations to be performed on data and a target module that is adapted to enable a defined interaction with the host computing device . . . ."  Id. at 36–39.  Therefore, the steps in claim 57 occur for the purpose of creating a technological improvement, which is to enhance security operations, so this claim is not an abstract idea.

### IV.  CONCLUSION

For the aforementioned reasons, the Court **denies** Apricorn's motion.

**IT IS SO ORDERED.**

---

[2]  While the Court does not proceed to a full Alice analysis of step two, it would appear that the technological improvements in the context of peripheral devices are inventive concepts.  Alice, 134 S. Ct. at 2353.