RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Ben Wang, SBN 228712
bwang@raklaw.com
Andrew D. Weiss, SBN 232974
aweiss@raklaw.com
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
SPEX TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SPEX TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KINGSTON TECHNOLOGY CORPORATION, KINGSTON DIGITAL, INC., KINGSTON TECHNOLOGY COMPANY, INC., IMATION CORPORATION, DATALOCKER INC., DATA LOCKER INTERNATIONAL, LLC,<br><br>Defendants. | Case No. 8:16-CV-01790-JVS-AGR<br><br>**PLAINTIFF SPEX TECHNOLOGIES, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** |

170803 SPEX Responsive Claim Construction Brief.docx

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

| | |
|---|---|
| SPEX TECHNOLOGIES, INC., | Case No. 8:16-CV-01799-JVS-AGR |
| Plaintiff, | |
| v. | |
| WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., HGST, INC., | |
| Defendants. | |
| SPEX TECHNOLOGIES, INC., | Case No. 8:16-CV-01800-JVS-AGR |
| Plaintiff, | |
| v. | |
| TOSHIBA AMERICA ELECTRONICS COMPONENTS INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., TOSHIBA AMERICA, INC., AND TOSHIBA CORPORATION, | |
| Defendants. | |
| SPEX TECHNOLOGIES, INC., | Case No. 2:16-CV-07349-JVS-AGR |
| Plaintiff, | |
| v. | |
| APRICORN, INC., | |
| Defendant. | |

170803 SPEX Responsive Claim Construction Brief.docx

ii

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

TABLE OF CONTENTS

I.    INTRODUCTION. ........................................................................................ 1

II.   ARGUMENT. ............................................................................................... 1

     A.    "Defined Interaction" And "Interaction With A Host Computing Device In A Defined Way." ................................................................ 1

     B.    "Peripheral Device." ......................................................................... 5

     C.    "Modular Device" ............................................................................. 5

     D.    "Security Module That Is Adapted To Enable One Or More Security Operations To Be Performed On Data." ............................... 6

     E.    "Security Means For Enabling One Or More Security Operations To Be Performed On Data"/"Means For Performing The One Or More Security Operations" ...................................................... 7

     F.    "Operably Connecting The Security Module And/Or The Target Module To The Host Computing Device In Response To [An / The] Instruction From The Host Computing Device." ................................ 7

     G.    "Means For Operably Connecting The Security Means And/Or The Target Means To The Host Computing Device In Response To An Instruction From The Host Computing Device." ................................ 9

     H.    "Means For Mediating Communication Of Data Between The Host Computing Device And The Target Means So That The Communicated Data Must First Pass Through The Security Means.". 9

     I.    "Means For Providing To A Host Computing Device, In Response To A Request From The Host Computing Device For Information Regarding The Type Of The Peripheral Device, Information Regarding The Function Of The Target Means" ............................... 11

     J.    "Providing To The Host Computing Device, In Response To The Request, Information Regarding The Type Of The Defined Interaction" ...................................................................................... 12

     K.    "Providing The Type Of The Target Module To The Host Computing Device In Response To The Request." ................................ 12

     L.    "Target Module That Is Adapted To Enable A Defined Interaction With The Host Computing Device." ................................................. 13

RUSS, AUGUST & KABAT

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

M.   "Target Module Is Adapted To Enable Communication With The Security Module And Prevent Direct Communication With The Host Computing Device." ............................................................................. 13

N.   "Means For Enabling Communication With A Host Computing Device" ............................................................................................... 13

III.   CONCLUSION. ........................................................................................ 15

170803 SPEX Responsive Claim Construction Brief.docx

ii

## TABLE OF AUTHORITIES

**Cases**

*Aristocrat Techs. Australia PTY Ltd. V. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008)................................................................ 10

*Baran v. Med. Device Techs., Inc.*,
    616 F.3d 1309 (Fed. Cir. 2010).................................................................. 6

*Biomedino, LLC v. Waters Tech. Corp.*,
    490 F.3d 946 (Fed. Cir. 2007)................................................................. 14

*Dow Chem. Corp. v. NOVA Chems. Corp. (Can.)*,
    809 F.3d 1223 (Fed. Cir. 2015).................................................................. 2

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009).................................................................. 6

*Epistar Corp. v. Int'l Trade Comm'n*,
    566 F.3d 1321 (Fed. Cir. 2009)......................................................... 8, 12, 13

*Ex Parte Schneider*,
    No. 2008-4677, 2009 WL 191989 (Bd. Pat. App. & Interf. Jan. 26, 2009) ..... 13

*Forest Labs., Inc. v. Teva Pharms. USA, Inc.*,
    No. 14-121, 2016 WL 54910 (D. Del. Jan. 5, 2016) ...................................... 4

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004).................................................................. 7

*Microsoft Corp. v. Motorola Inc.*,
    No. C10-1823JLR, 2013 WL 454268 (W.D. Wash. Feb. 7, 2013) ............ 10, 11

*MONKEYmedia, Inc. v. Apple, Inc.*,
    Case No. A-10-CA-319-SS, 2015 WL 4758489 (W.D. Tex. Aug. 11, 2015)........ 4

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012)................................................................ 14

*O2COOL, LLC v. One World Techs., Inc.*,
    187 F. Supp. 3d 927 (N.D. Ill. 2016) .......................................................... 3

*One-E-Way, Inc. v. ITC*,
    No. 2016-2105, 2017 WL 2509382 (Fed. Cir. Jun. 12, 2017)......................... 4

**Rules**

35 U.S.C. § 112(6) ....................................................................... 6, 7, 13

RUSS, AUGUST & KABAT

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

## I.   INTRODUCTION.

SPEX's proposed constructions reflect the plain meaning of the disputed terms, the intrinsic evidence and the controlling case law.  Defendants take a different approach; for the sake of their litigation positions, Defendants propose constructions that are not consistent with the intrinsic evidence and are not supported by legal precedent.  For example, despite some Defendants having no trouble understanding the meaning of the phrases in earlier filings with the Patent and Trademark Office, Defendants take the position that the "defined interaction" terms are indefinite.  Having assumed their conclusion, Defendants (and their expert) create ambiguities that are not consistent with the understanding of a person of ordinary skill in the art after reading the intrinsic evidence.  Where evidence is not helpful, Defendants simply ignore it.  Because SPEX has proposed the correct constructions, the Court should adopt SPEX's proposals.

## II.   ARGUMENT.

### A.   "Defined Interaction" And "Interaction With A Host Computing Device In A Defined Way."

As described in SPEX's Opening Brief, a person of ordinary skill in the art would understand the meaning of these phrases in light of the intrinsic evidence. For example, the '135 patent discloses that "the target module is adapted to enable a defined interaction with a host computing device (***examples of which are given below***)." '135 patent at 4:18-20 (emphasis added).  One sentence later, those examples are in fact given; the specification expressly identifies data storage ("adapted to enable non-volatile storage of data") and data communication ("adapted to enable communication between the host computing device and a remote device") as examples of "defined interaction[s]." '135 patent at 4:22-31. SPEX's proposed constructions embody the teachings of the intrinsic evidence as well as the plain and ordinary meaning of the terms.

Defendants do not meet their burden of showing that these terms are

RUSS, AUGUST & KABAT

indefinite.     Indeed, Defendants' only argument is that SPEX's proposed constructions are not consistent with the ordinary meanings of "interaction" and "defined."     Defs. Op. Br.[1] at 4:22-6:10 (arguing that SPEX's proposed constructions are not consistent with the ordinary meaning of "interaction"); 7:1-20 (arguing that SPEX's proposed constructions do not address "defined," an argument that could not be made unless Defendants understood the meaning of defined).[2]   Defendants do not meet their affirmative burden of showing by clear and convincing evidence that these terms are indefinite.   *E.g.*, *Dow Chem. Corp. v. NOVA Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015) (Moore, J., concurring).   Defendants' own arguments admit that these terms have reasonably certain meanings, even if they refuse to expressly set forth the meaning they are applying.   Without showing more (*e.g.*, that the intrinsic evidence contradicts the ordinary meaning), Defendants have not met their burden of showing that these phrases are indefinite.

Furthermore, Defendants' criticisms of SPEX's proposed constructions must be rejected as well.   First, Defendants argue that SPEX's proposed constructions do not account for the plain meaning of "interaction," which requires an "action between two entities."   Defs. Op. Br. at 4:22-6:10.   This is not true.   The relevant portions of the claims are directed to a target means (or module) enabling a defined interaction with a host computing device.   *E.g.*, '802 patent at claim 1, '135 patent at 57.   By the very language of the claim, the "interaction" involves two entities – the peripheral/modular device, and the host computing device.   Examples of the

---

[1] "Defs. Op. Br." refers to Defendants' Opening Claim Construction Brief, D.I. 94 in the *Kingston* action.  Defendants filed the same brief in each action.

[2] Like Defendants themselves, Defendants' expert (Dr. Jones) admitted that both "interaction" and "defined" have common ordinary meanings.  Second Weiss Decl. at Ex. 9 at 52:14-25; 68:17-69:15.  Also like Defendants, Dr. Jones chose not to apply that meaning in attempting to determine a construction for these phrases.

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

action (in other words, functionality) include data storage (the peripheral/modular device and host computing device exchanging data to be stored on the peripheral/modular device) or data communication (exchanging data between the peripheral/module device and host computing device to be sent out over a network). Defendants have not shown any "defined interactions" that would be captured by SPEX's proposed constructions but would not meet their plain meaning of "interaction."[3]

Defendants' second criticism is that SPEX's construction conflicts with the teachings of the intrinsic evidence. As noted above, Defendants' argument directly contradicts their argument that the intrinsic evidence does not teach the meaning of these terms. In any event, when all of the intrinsic evidence is considered, as discussed in SPEX's Opening Brief and above, Defendants' argument is inconsistent with the intrinsic evidence. The "defined interaction" is the functionality. *E.g.*, '802 patent at claim 1 (the target means (*e.g.*, storage media) enables a defined interaction (*e.g.*, storage functionality)); '135 patent at 4:18-31 (discussed above); '802 patent at 3:34-36 (defined interactions can provide functionalities; using the words "defined interaction" and "function" interchangeably). The cases cited by Defendants do not support their argument. *See O2COOL, LLC v. One World Techs., Inc.*, 187 F. Supp. 3d 927, 934-935 (N.D. Ill. 2016) (finding indefiniteness where the plain meaning of the term contradicted the specification; Defendants in this action have argued that the phrases have no ordinary meaning); *MONKEYmedia, Inc. v. Apple, Inc.*, Case No. A-10-CA-319-

---

[3] Defendants take Mr. Gomez's testimony out of context in their brief. Mr. Gomez testified about the difference between a defined interaction (*i.e.*, the functionality) and an interaction. For example, it is the interaction between a peripheral device and host computing device that provides the data needed for the data storage defined interaction. Without that interaction, the defined interaction would have no purpose.

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

SS, 2015 WL 4758489 (W.D. Tex. Aug. 11, 2015) (finding the plain meaning of the claim language its circular).[4]

Defendants also criticize SPEX's proposed constructions because the constructions do not differentiate "defined interaction" from the non-claim term "interaction," and because it does not answer "who or what 'defines' the interaction." Defs. Op. Br. at 7:1-20. As addressed in SPEX's Opening Brief, the former argument is irrelevant. *See, e.g.*, *One-E-Way, Inc. v. ITC*, No. 2016-2105, 2017 WL 2509382, at *6 (Fed. Cir. Jun. 12, 2017). As to the later argument, the claims themselves answer Defendants' question: it does not matter. The claims of the '802 and '135 patents do not limit the defined interaction to being defined by a specific entity. Contrary to Defendants' argument, SPEX's proposed construction (including "predefined, specific" functionality) addresses the "defined" aspect of the phrases.

Defendants' final criticism is to dismiss the examples provided in the specification as not being sufficient. The case Defendants primarily rely on, *Forest Labs., Inc. v. Teva Pharms. USA, Inc.*, No. 14-121, 2016 WL 54910 (D. Del. Jan. 5, 2016), however, is a fact-specific ruling that has no bearing here. In *Forest Labs.*, the claim phrase required a certain result of a study. *Id.* at *8. The intrinsic evidence did not limit the type of study required by the claims. *Id.* The undisputed evidence, however, showed that different studies gave different results. *Id.* at *9. Because the intrinsic evidence did not specify a specific study, the phrase was deemed indefinite. *Id.* This is not the factual situation here.

Defendants have not met their burden of showing that these phrases are indefinite. Accordingly, the Court should adopt SPEX's proposed constructions.

---

[4] Defendants' third argument is that SPEX's proposed constructions are contradictory. While SPEX disagrees for the reasons discussed in the Opening Brief, Defendants' argument is inconsequential because SPEX has no objection to the Court construing both phrases consistent with "defined interaction."

4

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**B.    "Peripheral Device."**

Defendants' position is, at best, misleading.  During the meet and confer process, Defendants were informed that SPEX did not object to Defendants' proposed language as long as Defendants agreed that it did not exclude internal hard drives.  Defendants refused.  Surprisingly, Defendants do not address the actual dispute in their brief.  Despite their argument that ambiguous constructions are inappropriate, Defendants intentionally ignore the known ambiguity of their proposed construction.  As discussed in detail in SPEX's Opening Brief, SPEX's proposed construction addresses the actual dispute and shows why SPEX's construction is consistent with both the plain meaning of the term and the intrinsic evidence.  The Court should therefore adopt SPEX's proposed construction.[5]

**C.    "Modular Device"[6]**

The Court should adopt SPEX's proposed construction.  SPEX Op. Br. at 25.  Indeed, Defendants admit that the specification uses language similar to SPEX's construction to describe "modular device 400."  Defs. Op. Br. at 10:19-25.  Defendants dismiss this language as describing "parts" of a module device but offer no reasoning as to why a physical description of the parts of a modular device is not a sufficient description.  Defendants also offer no evidence or argument as to the ordinary meaning of "modular device."  Instead, Defendants argue that "peripheral device" and "modular device" are used interchangeably in the specification.  The statements relied on by Defendants do not show any express disclaimer altering the ordinary meaning of "modular device"; the specification

---

[5] Defendants argue that "keyboard-computer-screen system" needs to be construed.  Defendants do not explain what needs to be construed.  Indeed, this language is taken directly from a dictionary illustrating the ordinary meaning of "peripheral device" in 1997.  Weiss Decl. Ex. 6.  This language is consistent with how a person of ordinary skill in the art understood the meaning of peripheral device.

[6] SPEX has reorganized its Brief to present its responsive arguments in the same order as Defendants presented their arguments.

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

statements are simply an acknowledgment that a "modular device," as used in the intrinsic evidence here, is a specific type of "peripheral device." *E.g.*, '135 patent at 10:34-42 ("This is true for a variety of types of peripheral devices…the modular device 602 is such a device").   As discussed in SPEX's Opening Brief, the examiner also acknowledged that the terms referred to similar, not the same, things.   Defendants' case law does not support their argument.   In *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322 (Fed. Cir. 2009), the Federal Circuit imported a limitation because a number of factors from the claims and specification showed that the inventors intended to include the limitation. *Id.* at 1330-31.   The Federal Circuit did not hold, as Defendants assert, that interchangeable use was sufficient to broaden the meaning of a term. *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) rejects the argument that "detachable" and "releasably" should be construed differently because they have the same ordinary meanings and were used interchangeably in the specification. *See id. Baran* is irrelevant here because the plain meaning of "modular device" is not the same as "peripheral device."   Accordingly, the Court should adopt SPEX's proposed construction.

> **D.**      **"Security Module That Is Adapted To Enable One Or More Security Operations To Be Performed On Data."**

This claim phrase should not be subject to 35 U.S.C. § 112(6) ("§ 112(6)") because, in its full context, "module" is not used as a nonce word.   SPEX Op. Br. at 11-12.   Defendants point to a single sentence describing the security module in the specification.   Defendants, however, ignore the extensive other evidence from the specification showing that the security module is a specific hardware module of a modular device. *E.g.*, '135 patent at 7:41-45, 8:62-9:1, 7:22-27, claim 55.   It is not used in its nonce sense where a module could refer to any hardware or software. Defendants also ignore the controlling law that a circuit, which is the meaning of a "security module" in light of the intrinsic evidence, followed by a function is

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

sufficient structure to overcome an invocation of § 112(6).  *See, e.g.*, *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004).

**E.    "Security Means For Enabling One Or More Security Operations To Be Performed On Data"/"Means For Performing The One Or More Security Operations"[7]**

The Court should adopt all of the structures proposed by SPEX.  SPEX Op. Br. at 9-10.   Defendants oppose the first two corresponding structures (cryptographic processing device 801 and security token) because they are allegedly "generic."   The only argument Defendants offer in support of their conclusion is a reference to Figure 8, which provides a short-hand label "CPU" for the box labeled 801.  Defendants, however, ignore the specification that discloses that a cryptographic processing device is more than a CPU; it is a processor with the specific capability of performing cryptographic operations.   '802 patent at 15:63-67.   Further, Figure 8 shows where the device is logically located in the system (*i.e.*, on the security module and connected to the means for mediating, a real-time clock and RAM).  It is not a "generic" device as asserted by Defendants; it is a cryptographic processor that is used for cryptographic purposes.  Defendants also present no arguments (or evidence) as to why the disclosed security token structure is generic.   Again, the specification has a detailed description of the token: "a device that performs security operations and that includes one or more mechanisms (such as, for example, use of a hardware random number generator and/or protected memory) to provide security for the content of those operations." *Id.* at 5:34-39.  Because Defendants ignore the intrinsic evidence, the Court should adopt SPEX's proposed construction.

**F.    "Operably Connecting The Security Module And/Or The Target**

---

[7] These phrases are used in asserted claims 1, 6, 11, 23, 25 and 39 of the '802 patent.  The parties agree that they have the same construction.

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

1

**Module To The Host Computing Device In Response To [An /**

2

**The] Instruction From The Host Computing Device."**

3          Defendants tacitly acknowledge that the plain meaning of this phrase is

4   readily apparent.   This phrase refers to operably connecting the security module to

5   the host computing device *or* operably connecting the target module to the host

6   computing device *or* operably connecting the security and target module to the

7   host computing device.   The fact that the plain meaning establishes these three

8   possibilities is the foundation for Defendants' argument that the "three mode"

9   limitation must be imported.[8]   The dispute is Defendants' proposal to import

10  limitations from a preferred embodiment into this claim phrase.   For example,

11  Defendants import the limitation of a "selection" of a mode, which is not inherent

12  in the plain meaning of the phrase.   Defendants also narrow the plain meaning of

13  the claim phrase by requiring that all possible modes be implemented, rather than

14  the plain meaning interpretation that a single mode could be implemented.

15  Despite significantly narrowing the scope of this phrase, Defendants have not
    pointed to any clear and unambiguous intent by the patentees to import the "three

16  mode" limitation into the phrase.  *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d
    1321, 1334 (Fed. Cir. 2009).  Instead, Defendants argue that the following

17  statement from the file history supports their argument:  "the patentee 'agreed to
    incorporate (means for operably connecting the security module and/or the target

18  module to the host computing device . . .) *which is not found in the prior art*.'"

19  Defs. Op. Br. at 14:15-17[9] (emphasis in original).  This statement shows the
    patentee and examiner using the claim phrase according to its plain and ordinary

20  meaning.  This statement does not mention, let alone import, Defendants' "three

21  mode" limitations into the claim phrase.  Defendants' convoluted attempt to

22

23  [8] Defendants assert the conclusion that the claim phrase is ambiguous.  Other than
    the conclusion, however, Defendants offer no arguments showing how this claim

24  phrase is ambiguous in the context of the '135 patent.

25  [9] Defendants' quote is not entirely accurate.  The full quote is "agreed to
    incorporate ***this claimed limitation*** (means for operably connecting the security

26  module and/or the target module to the host computing device . . .) which is not

27  found in the prior art.'"  Defs. Decl. Ex. E at SPEX00000187 (omitted language
    highlighted).  The omitted language is harmless.

28

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

illustrate the thought processes of the patentee and examiner does not rise to level of clear and unambiguous disclaimer.  And, notably, Defendants cite to no case law suggesting that a Court should engage in such a speculative process in an attempt to find disclaimer.  Indeed, the law requiring disclaimer to be clear and unambiguous counsels against Defendants' approach.

The Court should therefore decline to adopt Defendants' proposed construction.

G.   **"Means For Operably Connecting The Security Means And/Or The Target Means To The Host Computing Device In Response To An Instruction From The Host Computing Device."**

Other than the imported "three mode" limitation discussed in the previous section, Defendants do not address this claim phrase in their Brief.  For the reasons expressed in SPEX's Opening Brief, the Court should adopt SPEX's proposed construction.[10]

H.   **"Means For Mediating Communication Of Data Between The Host Computing Device And The Target Means So That The Communicated Data Must First Pass Through The Security Means."**

Despite Defendants' use of buzz words like "general purpose" and "programmed," Defendants have failed to show that either of the structures proposed by SPEX are general purpose computers.  Beginning with the second structure (interface control device 910), it remains unrebutted that the proposed structure is not a general purpose computer.  Gomez Decl. at ¶ 57; Defs. Decl. Ex. K at 158:3-159:1.  The structure could be implemented using any method known in the circuit design art.  The fact that such methods include using an FPGA, as

---

[10] To the extent Defendants address aspects of the proposed constructions other than the "three mode" limitation in their responsive brief, such arguments should be struck.  SPEX will not have had an opportunity to address Defendants' argument in writing.

9

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

1  Defendants note, does not make the specific interface control device 910 circuit a
2  "general purpose computer."

3  Defendants have also failed to show that an FPGA is a "general purpose
4  computer" under Federal Circuit precedent.   The Federal Circuit developed the
5  algorithm requirement because "general purpose computers" or standard computer
6  processors (like an Intel Core CPU) "can be programmed to perform very different
7  tasks in very different ways."  *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game*
8  *Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).   The undisputed expert evidence
9  shows that FPGAs, particularly those in 1997, were low-level devices capable only
10  of performing the functions they were designed for.   Gomez Decl. at ¶¶ 59-61;
11  Defs. Decl. Ex. K at 153:18-157:9 (testifying that the functionality of FPGAs was
12  very limited in 1997).   For example, an FPGA integrated into a system such as the
13  one shown in Figure 8 of the '802 patent could only have one likely task: mediating
14  communications.   Particularly in 1997, it could not have done multiple, complex
15  tasks.   An FPGA is not capable of being "programmed to perform very different
16  tasks in very different ways" like a PC.   An FPGA is more similar to a screwdriver.
17  While there are many types of screwdrivers, they only have a limited number of
18  uses depending on the situation (*e.g.*, driving screws, being used as a wedge, being
19  used to pry objects, etc.).

20  The case relied on by Defendants, *Microsoft Corp. v. Motorola Inc.*, No.
21  C10-1823JLR, 2013 WL 454268 (W.D. Wash. Feb. 7, 2013), is an outlier that
22  should not be followed here.   It is not controlling precedent and Defendants cited
23  no Federal Circuit law suggesting that low-level circuits like an FPGA require an
24  algorithm.   At best, *Microsoft* is a misapplication of Federal Circuit precedent.   As
25  explained above, a general purpose computer cannot do anything without software.
26  A circuit, like an ASIC or FPGA, does not require software; it takes an input and
27  performs the function for which it was designed.   The Cout's ruling that an ASIC
28  requires "further programming" appeared to be based on a misunderstanding of the

10

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

1   evidence presented. *See* 2013 WL 454268, at *7. Furthermore, the *Microsoft*

2   court ultimately found the claim element indefinite because no algorithm was

3   disclosed. *Id.* at *8. This is not the case here.

4         If the Court finds that an algorithm is necessary, the specification discloses a

5   corresponding algorithm that includes receiving data, consulting a configuration

6   setting and routing data to the security device. SPEX Op. Br. at 22. Defendants do

7   not show how this algorithm is insufficient or identify structure that is allegedly

8   missing. Instead, Defendants baldly conclude that no algorithm is offered without

9   addressing SPEX's proposal. Defs. Op. Br. at 16:27-17:6. Further, Defendants do

10  not address the inconsistency how an FPGA "programmed to perform" disclosed

11  steps does not include the necessary algorithm. By Defendants' own proposed

12  construction, they propose a programmed FPGA. Defendants' argument is

13  therefore insufficient and should be rejected.

14        Accordingly, the Court should adopt the construction proposed by SPEX and

15  find that no algorithms are necessary.

16  I.    **"Means For Providing To A Host Computing Device, In Response**

17        **To A Request From The Host Computing Device For Information**

18        **Regarding The Type Of The Peripheral Device, Information**

19        **Regarding The Function Of The Target Means"**

20        Defendants have not met their burden of establishing that this claim phrase

21  is indefinite. Defendants admit that memory section 612a provides information

22  about the device in response to a request from the host computing device. The

23  only dispute is whether it discloses sending information about the target

24  functionality. This is precisely what the specification discloses. In the paragraph

25  following the disclosure of memory section 612a, the specification discloses that

26  the peripheral device can assume the identity of the target functionality. '802

27  patent at 8:15-18. A person of ordinary skill in the art understands that, in such a

28  situation, memory section 612a would provide information about the target

RUSS, AUGUST & KABAT

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

functionality, not the peripheral device functionality (to the extent such information is different).  Indeed, as Defendants admit, this is precisely what the '135 patent discloses.  Def. Op. Br. at 19:13-20 (citing '135 patent at 10:26-11:39, 11:56-67).  The Court should therefore adopt SPEX's proposed construction.

**J.** **"Providing To The Host Computing Device, In Response To The Request, Information Regarding The Type Of The Defined Interaction"**

Defendants provide no clear and unambiguous disclaimer importing their proposed limitation.  This is not a dispute about whether two terms have distinct meanings, as Defendants try to characterize the dispute.  SPEX does not dispute that the plain meaning applies.  Nothing in the plain meaning, however, requires that the device type information be different from the target functionality type information.  Despite not being supported by the plain meaning, Defendants propose to import their "different" limitation in this phrase.  A pair of hypotheticals provides the best illustration of the issue.  In the first hypothetical, all storage devices (whether encrypting or not) are identified by "100."  In the second hypothetical, storage devices are identified by "100" and encrypting storage devices are identified by "255."  Under the plain meaning, so long as the information provided is consistent with the identifying information of the type of defined interaction (*i.e.*, non-encrypting data storage), both hypotheticals practice the plain meaning.  Under Defendants' proposal, however, the first hypothetical could never infringe because the identification information is not different.  Defendants are therefore importing a limitation but have cited no intrinsic evidence clearly and unambiguously importing the limitation.  *See, e.g.*, *Epistar*, 566 F.3d at 1334.  Accordingly, the Court must reject Defendants' proposed construction.

**K.** **"Providing The Type Of The Target Module To The Host Computing Device In Response To The Request."**

Defendants proposed importations should be rejected for the same reasons as

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S**
**RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

in the previous section.  *See, e.g.*, *Epistar*, 566 F.3d at 1334.

L.     **"Target Module That Is Adapted To Enable A Defined Interaction With The Host Computing Device."[11]**

For the same reasons discussed above in Section III.D, the "target module" phrase connotes sufficient structure and does not invoke § 112(6).

M.     **"Target Module Is Adapted To Enable Communication With The Security Module And Prevent Direct Communication With The Host Computing Device."**

This phrase is not subject to § 112(6) because "module" is not used as a nonce word for the same reasons described in Section III.D.  If the phrase is subject to § 112(6), the only dispute is whether structure is linked to the preventing functionality in the specification.  Adequate structure is disclosed.  SPEX Op. Br. at 13-15.  Further, Defendants' argument in opposition is, at best, misleading.  The recited function is for enabling communication with a ***security module*** but preventing ***direct*** communication with a ***host computing device***.  Given the different entities involved, a structure could certainly perform both recited functions (such as by being interposed between the target module and host computing device thereby preventing direct communication).[12]  Accordingly, the Court should adopt SPEX's proposed constructions.

N.     **"Means For Enabling Communication With A Host Computing Device"**

---

[11] SPEX acknowledges the Court's Order (D.I. 97 in the *Kingston* case) and does not intend to argue this term or the following terms at the hearing.  SPEX provides these responsive arguments to ensure it has responded to Defendants' arguments in their Opening Brief.

[12] The only precedent cited by Defendants for its position is not a claim construction case; it is analyzing validity during an interference proceeding in the PTO.  *Ex Parte Schneider*, No. 2008-4677, 2009 WL 191989, at *4-6 (Bd. Pat. App. & Interf. Jan. 26, 2009).

**PLAINTIFF SPEX TECHNOLOGIES, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1    Defendants argue that the disputed structures are not appropriate because
2    they are "generic classes of structures," not "actually disclosed structures."
3    Defendants offer no factual or legal argument as to why any of these structures are
4    "generic classes."  For example, Defendants offer no explanation as to why a serial
5    interface is generic but a wireless communications interface or smart card interface
6    is not generic.  Indeed, it appears that Defendants true quarrel is with the breadth of
7    the disclosed structures, not the disclosed structures themselves.  Defendants cite
8    no case law, however, supporting their argument that corresponding structure
9    should be ignored because it renders the phrase too broad.  *Noah Sys., Inc. v. Intuit*
10   *Inc.*, 675 F.3d 1302 (Fed. Cir. 2012) discussed whether an algorithm for some but
11   not all of the recited function is sufficient.  *Id.* at 1318-19.   This is not the issue
12   here.  *Biomedino, LLC v. Waters Tech. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007)
13   addresses a specification that does not disclose specific structures; it only discloses
14   "known…equipment."  Again, this is not the case here.  Unlike Defendants' cited
15   cases, the specification here specifically discloses corresponding structures.
16   Therefore, the Court should adopt SPEX's proposed structures.
17
18
19
20
21
22
23
24
25
26
27
28

170803 SPEX Responsive Claim Construction Brief.docx

14

**III.    CONCLUSION.**

For the foregoing reasons, SPEX's proposed constructions are consistent with the evidence and law, and should be adopted by the Court.

Respectfully submitted,

DATED: August 3, 2017                RUSS, AUGUST & KABAT

_/s/ Andrew D. Weiss_
Andrew D. Weiss

RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Ben Wang, SBN 228712
bwang@raklaw.com
Andrew D. Weiss, SBN 232974
aweiss@raklaw.com
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

**Attorneys for Plaintiff
SPEX TECHNOLOGIES, INC.**

1

## CERTIFICATE OF SERVICE

2

3      The undersigned hereby certifies that the foregoing document was filed

4   electronically in compliance with Local Rule CV-5(a) on August 3, 2017.  As

5   such, this document was served on all counsel who have consented to electronic

6   service.

7
                                    */s/ Andrew D. Weiss*
8                                  Andrew D. Weiss

9

10

11

RUSS, AUGUST & KABAT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

170803 SPEX Responsive Claim Construction Brief.docx          16