## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** <br> **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** <br> **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al** <br> **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

Present: The Honorable      James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **(IN CHAMBERS)**
ORDER REGARDING CLAIM CONSTRUCTION

Plaintiff SPEX Technologies, Inc. ("SPEX" or "Plaintiff") and Defendants Toshiba America Electronic Components Inc., Toshiba America Information Systems, Inc., Toshiba Corporation, Western Digital Corporation, Western Digital Technologies, Inc., HGST, Inc., Imation Corporation, Kingston Technology Corporation, Kingston Digital Inc., Kingston Technology Company, Inc., Apricorn, Datalocker, Inc., and Data Locker International, LLC (together "Defendants") have submitted proposed claim constructions for terms contained in two of SPEX's patents. See, e.g., Docket Nos. 88, 92.[1] Both parties have submitted opening and responsive claim construction briefs. SPEX Op. Br., Docket No. 96; Defendants Op. Br., Docket No. 94; SPEX Resp. Br., Docket No. 100; Defendants Resp. Br., Docket No. 98.

The Court construes the claim terms identified below.

### BACKGROUND

Two of SPEX's patents are currently at issue:

1.  U.S. Pat. 6,088,802 ("the '802 patent"). Docket No. 96, Ex. 1.

---

[1] All docket citations are to Case No. 8:16-cv-01790 unless otherwise noted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** <br> **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** <br> **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al** <br> **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

2. U.S. Pat. 6,003,135 ("the '135 patent"). <u>Id.</u> Ex. 2.

The applications resulting in the '802 Patent and the '135 Patent were filed the same day: June 4, 1997. The two patents are not technically related. However, the patent applications were prosecuted in parallel. The patents also have overlapping figures and specification disclosures.

Both patents relate to devices that can communicate with host computing devices to provide various operations, including security operations. <u>See</u> '802 Patent at Abstract; '135 Patent at Abstract. The '802 Patent is titled "PERIPHERAL DEVICE WITH INTEGRATED SECURITY FUNCTIONALITY" and issued on July 11, 2000. The '135 Patent is titled "MODULAR SECURITY DEVICE" and issued on December 14, 1999. Both patents are now expired.

SPEX alleges that Defendants infringed Claims 1, 2, 6, 7, 11, 12, 23, 25, 38, and 39 of the '802 Patent. SPEX Op. Br. at 2. Claim 1 recites:

1.    A peripheral device, comprising:
      security means for enabling one or more security operations to be
            performed on data;
      target means for enabling a defined interaction with a host computing
            device;
      means for enabling communication between the security means and
            the target means;
      means for enabling communication with a host computing device;
      means for operably connecting the security means and/or the target
            means to the host computing device in response to an
            instruction from the host computing device; and
      means for mediating communication of data between the host
            computing device and the target means so that the
            communicated data must first pass through the security means.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |
|---|---|

SPEX also alleges that Defendants infringed Claims 55–58 of the '135 Patent. SPEX Br. at 2. Claim 55 recites:

> 55.     For use in a modular device adapted for communication with a host computing device, the modular device comprising a security module that is adapted to enable one or more security operations to be performed on data and a target module that is adapted to enable a defined interaction with the host computing device, a method comprising the steps of:
>> receiving a request from the host computing device for information regarding the type of the modular device;
>> providing the type of the target module to the host computing device in response to the request; and
>> operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device.

## LEGAL STANDARD

### I.     General Claim Construction Principles

Claim construction is "exclusively within the province of the court." Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction "must begin and remain centered on" the claim language itself. Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). But extrinsic evidence may also be consulted "if needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

i.e., as of the effective filing date of the patent application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances general purpose dictionaries may be helpful." Id. at 1314 (internal citation omitted). In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Then "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. (internal quotation marks omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (internal quotation marks omitted).

But it is improper to read limitations from the specification into the claim. Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.") (quoting Phillips, 415 F.3d at 1312). A court does "not import limitations into claims from examples or embodiments appearing only in a patent's written description, *even when a specification describes very specific embodiments of the invention* or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" JVW Enters., Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations omitted) (italics added).

**II.    Means Plus Function Claims**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

Under 35 U.S.C. § 112(6),[2] means-plus-function claiming occurs when an element in a claim is a "means or step for performing a specified function without the recital of structure, material, or acts in support thereof . . . ." In that case, "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." Id. This provision allows "patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function . . . ." Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc). At the same time, it constrains "how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." Id.

The failure to use the term "means" creates a rebuttable presumption that § 112(6) does not apply. See Advanced Ground Info. Sys., Inc. v. Life360, Inc., 830 F.3d 1341, 1347 (Fed. Cir. 2016). To overcome this presumption a challenger must show "that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." Id. (quoting Williamson, 792 F.3d at 1348). The challenger must establish § 112(6)'s applicability by a preponderance of the evidence. Skky, Inc. v. MindGeek, s.a.r.l., 859 F.3d 1014, 1019 (Fed. Cir. 2017).

Once a court concludes that a term is subject to § 112(6), it follows a two-step process. Williamson, 792 F.3d at 1351. "First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function." Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1311 (Fed. Cir. 2012) (internal citations omitted). "Where there are multiple claimed functions . . . the patentee must disclose adequate corresponding structure to perform all of the claimed functions. If the patentee fails to disclose adequate corresponding structure, the claim is indefinite." Williamson, 792 F.3d at 1351.

---

[2] § 112(6) was renamed as § 112(f) by the America Invents Act, Pub. L. No. 112–29 ("AIA"), which took effect on September 16, 2012. Because the inventors here applied for the patents-in-suit before the act's passage, § 112(6) applies here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

A corresponding structure is one that the specification or prosecution history "clearly links . . . to the function recited in the claim." Id. The specification's disclosure of a corresponding structure "must be of adequate corresponding structure to achieve the claimed function." Id. (internal quotations omitted). "If a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite." Id.

For cases "involving a special purpose computer-implemented means-plus-function limitation," the disclosed structure must "be more than simply a general purpose computer or microprocessor." Noah, 675 F.3d at 1312. Instead, the specification must "disclose an algorithm for performing the claimed function." Id. (quoting Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1367 (Fed. Cir. 2008)). "The specification can express the algorithm 'in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.'" Id. (quoting Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed. Cir. 2008)).

**CLAIM CONSTRUCTION**

**I.    "defined interaction" ('802 Patent, Claims 1, 6, 11, 23, 38, 39; '135 Patent, Claims 55, 57, 58) and "interaction with a host computing device in a defined way" ('802 Patent, Claims 38, 39)**

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| "defined interaction": A specific, predefined functionality of the device, such as data storage, data communication, data input and output or user identification "interaction with a host computing device in a defined way": "Interaction with a host | Both terms: Indefinite | "an interaction [with a host computing device] that can provide one or more of a variety of functionalities" |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |
|---|---|

| computing device using a specific, predefined functionality of the device, such as data storage, data communication, data input and output or user identification | | |
|---|---|---|

The parties dispute whether the terms "defined interaction" and "interaction with a host computing device in a defined way" are indefinite. Defendants argue that the terms are indefinite because they "have no ordinary meaning in the art and are not defined or otherwise clarified by the specifications of the Asserted Patents." Defendants Op. Br. at 3. Defendants argue that the claims themselves and the extrinsic evidence do not provide the metes and bounds of a "defined interaction" or otherwise clarify the term's meaning. Id. at 4. Defendants also challenge SPEX's construction as improperly swapping the term "interaction" for the term "functionality" and the term "defined" for the terms "specific, predefined." Id. at 5–6.

Claims 38 and 39 of the '802 Patent include both the "defined interaction" and "interaction with a host computing device in a defined way" terms. In these two claims, the term "interaction with a host computing device in a defined way" provides an antecedent basis for the term "defined interaction." For example, Claim 38 recites:

> 38.    For use in a peripheral device adapted for communication with a host computing device, performance of one or more security operations on data, and *interaction with a host computing device in a defined way*, a method comprising the steps of:
>> receiving a request from a host computing device for information
>>> regarding the type of the peripheral device; and
>> providing to the host computing device, in response to the request,
>>> information regarding the type of *the defined interaction*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>   **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |
|---|---|

Accordingly, these terms should be construed the same. <u>Haemonetics</u> <u>Corp.</u> <u>v.</u> <u>Baxter</u> <u>Healthcare</u> <u>Corp.</u>, 607 F.3d 776, 780–82 (Fed. Cir. 2010).

The '802 Patent Abstract further discusses "defined interactions":

*The defined interactions can provide a variety of types of functionality* (e.g., data storage, data communication, data input and output, user identification). The peripheral device can also be implemented so that the security operations are performed in-line, i.e., *the security operations are performed between the communication of data to or from the host computing device and the performance of the defined interaction.*

'802 Patent at Abstract (emphasis added); <u>see</u> <u>also</u> <u>id.</u> at 3:33–36; '135 Patent at 4:18–31.

Defendants challenge SPEX's construction for omitting the term "interaction." <u>Id.</u> In doing so, Defendants acknowledge that they understand the plain meaning of the term "interaction." <u>See</u> Defendants Op. Br. at 4–5 (arguing that SPEX's proposed construction "conflicts with the meaning of the word 'interaction'. . .."). The Court agrees with Defendants that this word should not be read out of the claim terms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

The Court similarly agrees that swapping the term "interaction" for the term "functionality" would be in error. As Defendants note, the patent specification refers to a defined interaction as *providing* a functionality. It would be nonsensical to construe an "interaction" as a "functionality" because it would lead portions of the specification to effectively state that a "functionality provides a functionality."

But while SPEX's proposed constructions have a number of shortcomings, Defendants have not met their burden of showing by clear and convincing evidence that these claim terms are indefinite. As stated, Defendants acknowledge that the term "interaction" has meaning. Defendants also acknowledge that the specification refers to a defined interaction as providing "a variety of types of functionality." Defendants Op. Br. at 5; see '802 Patent at Abstract. The patent uses the terms "defined interaction" and "interaction with a host computing device in a defined way" consistent with the plain and ordinary meaning of the words "defined" and "interaction." Although both parties appear to agree that "defined interaction" is not a term in the art, it does not follow that a person of skill in the art would not understand the boundaries of the phrase "defined interaction" in the context of the asserted patents.

Defendants' only other argument appears to be that the term "defined" does not have a reasonably definite scope. The Court finds SPEX's expert testimony on this issue persuasive:

In the 1997 timeframe, it had become *common to specify operating behavior* for end-point devices in order to improve compatibility and interoperability within a host computing environment. Legacy systems that lacked this capability often demonstrated an inability to coexist and operate properly. The problem had become especially severe in open systems such as personal computers where circuit cards were commonly added to expand the system capabilities. Often these cards did not work as intended *due to a mismatch of the expected behaviors*. A person of ordinary skill in the timeframe of the patent was very familiar with these problems and would have been familiar

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

> with the solutions. *One such solution was to define the types of functionality within which a product would operate and to convey that information to the host computer.*

SPEX Op. Br., Attachment 10 ("Gomez Decl.") ¶ 40. Mr. Gomez's explanation of a solution that "define[s] the types of functionality within which a product would operate and [] convey[s] that information to the host computer" is consistent with how the patent claims and specification use the term "defined interaction."

At the hearing, Defendants submitted that SPEX had also disavowed claim scope for the term "defined interaction" in Patent Owner Preliminary Responses during *inter partes* review proceedings. After reviewing the parties' supplemental briefs on the issue (Docket Nos. 105, 115) and supporting evidence, the Court is not persuaded that SPEX's statements to the PTAB reflect a clear disavowal of "defined interaction" to exclude the transfer of data between the host computer and data storage. Rather, as the PTAB noted in its explanation for denying the IPR petition, Patent Owner (SPEX) simply pointed out that "[t]he claims explicitly require 'communicating . . . to exchange data' *as a separate limitation from* 'performing one or more security operations and the defined interaction on the exchanged data.'" Docket No. 106, Ex. A (IPR2017-00825, Paper No. 8) at 18 (emphasis added). This does not exclude transferring data from being functionality provided by a "defined interaction." SPEX's statements were not such a clear disavowal as to warrant limiting this claim term.

The Court finds the terms "defined interaction" and "interaction with a host computing device in a defined way" convey  reasonably certain meaning to a person of skill in the art. The Court construes the terms as "an interaction [with a host computing device] that can provide one or more of a variety of types of functionality."

## II.    "peripheral device" ('802 Patent, Claims 1, 2, 6, 7, 11, 12, 23, 25, 38, 39)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.<br>SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al<br>SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al<br>CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
| --- | --- |

| SPEX's Construction | Defendants' Construction | Court's Construction |
| --- | --- | --- |
| "Any device that operates outside of a host computing device (i.e. the keyboard-computer-screen system) and that is connected to the host computing device. Typical peripheral devices include but are not limited to a disk drive and a printer." | "any device that operates outside of a host computing device and that is connected to the host computing device" | "a device that operates functionally separate from a host computing device and that is connected to the host computing device, including such devices in the same housing as the host computing device" |

In their papers, the parties disputed whether "peripheral device" must be limited to a type of device located physically outside the housing or casing of a host computing device. SPEX argued that a peripheral device may be housed with a host computing device, while Defendants argued the term must be limited solely to devices that exist physically apart from the host computing device. SPEX Op. Br. at 6–8; Defendants Op. Br. at 8–9.

At the hearing, Defendants' arguments emphasized their concern that the peripheral device be *functionally* separate from the host computing device. Defendants argued, for example, that in their opinion, a device that performs part of the operation of the host computing device could not also perform the functions of the claimed peripheral device. In this regard, Defendants identified portions of the specification referring to prior art where security features were incorporated into the host computing device itself, leading to inadequate security. *See* '802 Patent at 2:10–21.  SPEX, to some extent, appeared to agree with Defendants about the '802 Patent requiring functional separation between the host computing device and peripheral device by directing the Court's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

attention to the fact that the '802 Patent specifically describes *connecting* the peripheral to the host computing device. SPEX, however, expressed concerns over possible ambiguity with using the phrase "functionally separate" in the construction because, SPEX argued, a peripheral device in its plain and ordinary sense may be *controlled by* the host computer.

The specification explicitly defines a "peripheral device" as "any device that operates outside of a host computing device and that is connected to the host computing device." '802 Patent at 4:52–55.  The patentee thus acted as its own lexicographer in defining a "peripheral device." Moreover, the plain language of this definition provides that the peripheral device be *connected to* the host computing device. In other words, the peripheral device must have some type of separation from the host computing device.

The term "peripheral device" appears in the preamble of the claims. For example, the preamble of Claim 1 of the '802 Patent states: "[a] peripheral device, comprising . . . ." Id. at 18:55. The claims do not recite language that would impose a limitation on the physical location of the peripheral device. The claims do, however, refer to "means for enabling communication with a host computing device." '802 Patent, Claim 1. Like the specification, the claims indicate a distinction between the peripheral device and the host computing device.

In their briefing, both parties tied their arguments about "peripheral device" to characterizations about the scope of the term "host computing device." SPEX Op. Br. at 6–8; Defendants Op. Br. at 8–9; Defendants Resp. Br. at 4–5.  For instance, SPEX asserted a narrow interpretation of host computing device, describing the "host computing device" as a system that may physically exist with other structures (such as a peripheral device) even though such structures are not considered part of the "host computing device." SPEX Op. Br. 6–8 (citing '802 Patent at 6:23–33, Fig. 6). Specifically, SPEX cited to a portion of the patent specification that describes the "host computing device" as a "monitor, keyboard, CPU[,] and RAM combination." Id. at 6–7 (citing '802 Patent at 6:23–33, Fig. 6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

Defendants argued that SPEX was attempting to narrow the meaning of "host computing device" by excluding internal hard drives. Defendants Resp. Br. at 4. Defendants contended that the patent discloses a broader interpretation of a "host computing device" that includes the hard disk drives internally housed with the rest of the host computing device. Defendants' Resp. Br. at 4. Defendants cited to portions of the '802 Patent that disclose:

> [t]he peripheral device driver can have previously been installed on a data storage device (e.g., hard disk) *of the host computing device* (in FIG. 6, the peripheral device driver is shown stored in the memory section 606b of the memory device 606 *of the host computing device* 601) . . . .

'802 Patent at 9:5–9; <u>see</u> Defendants Resp. Br. at 4.

The parties' arguments about the scope of the term "host computing device" are only tangentially related to the construction of "peripheral device." Indeed, the parties have not asked the Court to construe the term "host computing device." The Court declines to do so. At bottom, these disclosures in the patent do not discuss the physical location of the "peripheral device," or its functional relationship with the host computing device.

While physical separation is not required, the specification in general distinguishes between the operation and functioning of the peripheral device compared to the host computing device. Indeed, the Background of the Invention emphasizes that in the prior art system,

> The host computing device 101 includes a security mechanism 101a (which can be embodied by appropriately configured hardware, software and/or firmware, such as, for example, a general purpose microprocessor operating in accordance with instructions of one or more computer programs).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

'802 Patent at 1:58–64. Figure 1 shows that security mechanism 101a in this prior art embodiment was in the host computing device, making the system "inherently insecure." Id. at Figure 1, 2:12–14. In comparison, the '802 Patent refers to "connecting" a peripheral device "outside" of the host computing device to the host computing device in order to provide security features. In other words, there is at least a functional separation between the peripheral device and host computing device.

To some extent, Plaintiff's extrinsic evidence supports this understanding of a peripheral device. According to Mr. Gomez's expert testimony, "[h]ard drives (*i.e.*, a permanent storage solution that resides in a computer case) were considered peripheral devices." Gomez Decl. ¶ 48. Mr. Gomez cites a dictionary definition that states, in part, "[t]ypical peripherals are a disk drive, a printer. . . ." Id. (citing SPEX Op. Br., Ex. 6). This evidence is consistent with how a person of skill in the art would understand the term "peripheral device" in the context of the '802 Patent only to the extent it recognizes a functional separation between the operation of the peripheral device and host computing device. In other words, while a peripheral device may be a hard drive, the intrinsic record is clear that the same hard drive that operates as part of the host computing device cannot also be the peripheral device.

In view of the above, the Court construes "peripheral device" as "any device that operates functionally separate from a host computing device and that is connected to the host computing device, including such devices in the same housing as the host computing device."

### III.   "modular device" ('135 Patent, Claims 55, 57, 58)

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
|  |  |  |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

| | | |
|---|---|---|
| Plain and ordinary meaning. The plain and ordinary meaning is: "physically separate devices that can be physically and electronically joined" | "a device that operates outside of a host computing device and that is connected to the host computing device" | "a device that operates functionally separate from a host computing device and that is connected to the host computing device, including such devices in the same housing as the host computing device" |

Defendants argue that peripheral device and modular device are used interchangeably by the asserted patents and should be construed the same. Defendants Op. Br. at 9–10 (citing '135 Patent at 10:34–42, 9:45–48, 9:53–59). Unlike its arguments for peripheral device, SPEX argues that modular device has a plain and ordinary meaning and is a physically separate device that can be physically and electronically joined to the host computing device. SPEX Op. Br. at 25 (citing '135 Patent at 7:42–45). At the hearing, SPEX submitted on the Court's tentative finding that the term "modular device" be construed the same as the term "peripheral device."

The specification uses the terms peripheral device and modular device interchangeably. For instance, the '135 Patent states:

Once connection between the modular device and the host computing device is made, the host computing device detects the presence of the modular device, as shown by step **502**. Such detection of the presence of a peripheral device is typically enabled as a standard aspect of the operating system software of the host computing device.

'135 Patent at 9:45–48; see also id. at 9:53–59, 10:34–42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al   CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

SPEX's argument in its papers that the modular device must be a physically separate device is unpersuasive. SPEX's citations from the intrinsic record relate to physically and electrically joining a security module and a target module in a particular embodiment. See '135 Patent at 7:42–45 ("The security module 401 and target module 402 are physically separate devices that can be physically and electrically joined (as described further below) to enable communication between the modules 401 and 402."). This disclosure does not require that a modular device be a physically separate device.

The Court is also unpersuaded by SPEX's argument about the prosecution history. See SPEX Op. Br. at 25. While the patent examiner referred to the peripheral device and modular device in slightly different terms (see SPEX Op. Br., Ex. 8 at 4), the *patent applicant* did not make any representations about the similarities or differences between a peripheral device and a modular device. Particularly given the '135 Patent's interchangeable use of the terms, there is no clear basis in the prosecution history for finding that these terms have different scope.

The Court construes "modular device" consistent with "peripheral device" as "a device that operates functionally separate from a host computing device and that is connected to the host computing device, including such devices in the same housing as the host computing device"

**IV.   "security means for enabling one or more security operations to be performed on data" ('802 Patent, Claims 1, 6, 11, 23, 25); "means for performing the one or more security operations" ('802 Patent, Claim 39)**

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Subject to 35 U.S.C. § 112(6) | Subject to 35 U.S.C. § 112(6) | Subject to 35 U.S.C. § 112(6) |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

Case
No.
and
Title

**SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**
**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**
**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics**
**Components Inc.,  et al**
**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn**

| | | |
|---|---|---|
| Recited Function: enabling one or more security operations to be performed on data; performing the one or more security operations<br><br>Corresponding Structures:<br><br>1.  Cryptographic processing device 801 (processor capable of performing the cryptographic operations , as described at '802 Patent at 15:63-67);<br><br>2.  Security token (device that performs security operations and that include one or more mechanisms (such as, for example, use of a hardware random number generator and/or protected memory) to provide security for the content of those operations as described at '802 Patent at 5:33-39);<br><br>3.  A specific hardware component programmed or | Recited Function: (1) enabling security operations to be performed on data; (2) performing the security operations<br><br>Corresponding Structures:<br><br>1.  A specific hardware component programmed or configured to perform a security operation disclosed in the '802 Patent at 18:1-47 or the '135 Patent at 21:29-22:9;<br><br>2.  A special purpose embedded processor, embodied on a single integrated chip and designated as MYK-82 (and also referred to by the name Capstone), which includes an ARM6™ processor core and several special purpose cryptographic processing elements that have been developed by the Department of Defense. | Recited Function: enabling one or more security operations to be performed on data; performing the one or more security operations<br><br>Corresponding Structures:<br><br>1.  A specific hardware component programmed or configured to perform a security operation disclosed in '802 Patent at 18:1-47 or '135 Patent at 21:29-22:9;<br><br>2.  A special purpose embedded processor, embodied on a single integrated chip and designated as MYK-82 (and referred to by the name Capstone) , which includes an ARM6™ processor core and several special purpose cryptographic processing elements that have been developed by the Department of Defense ('802 Patent at 15:67-16:8) |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
|---|---|
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

configured to perform a security operation disclosed in '802 Patent at 18:1-47 or '135 Patent at 21:29-22:9;

4. A special purpose embedded processor, embodied on a single integrated chip and designated as MYK-82 (and referred to by the name Capstone) , which includes an ARM6$^{TM}$ processor core and several special purpose cryptographic processing elements that have been developed by the Department of Defense ('802 Patent at 15:67-16:8); or

5. Equivalents thereof.

If an algorithm is necessary for any corresponding structures, SPEX identifies one or more of the security operations disclosed in the '802 Patent at 18:1-47.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

The parties agree that the "security means . . ." terms are subject to § 112(6) and agree on two corresponding structures:

1.  A specific hardware component programmed or configured to perform a security operation disclosed in the '802 Patent at 18:1-47 or the '135 Patent at 21:29-22:9;

2.  A special purpose embedded processor, embodied on a single integrated chip and designated as MYK-82 (and also referred to by the name Capstone), which includes an ARM6$^{TM}$ processor core and several special purpose cryptographic processing elements that have been developed by the Department of Defense.

SPEX argues that this term should encompass two additional structures: a cryptographic processing device and a security token. SPEX Op. Br. at 9–10. Defendants argue that the specification fails to disclose algorithms for these additional "generic elements" and they should be rejected. Defendants Op. Br. at 12–13.

The "special purpose embedded processor" structure, which the parties agree on, is disclosed in the '802 Patent as a *type of* cryptographic processing device 801:

The cryptographic processing device 801 can be adapted to perform security operations. Generally, the cryptographic processing device 801 can be embodied by any processor capable of performing the cryptographic operations desired to be provided by the peripheral device 800. *In one embodiment of the peripheral device 800, the cryptographic processing device 801 is a special purpose embedded processor*, embodied on a single integrated chip and designated as MYK-82 (and also referred to by the name

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

Capstone), which includes an ARM6™ processor core and several special purpose cryptographic processing elements that have been developed by the Department of Defense. The construction and operation of the Capstone chip is known by those skilled in the art of cryptographic processing.

'802 Patent at 15:63–16:9. The specification's more general disclosure of a cryptographic processing device provides insufficient corresponding structure for this means plus function term. For patent claims "involving a special purpose computer-implemented means-plus-function limitation," the disclosed structure must "be more than simply a general purpose computer or microprocessor." Noah, 675 F.3d at 1312. Instead, the specification must "disclose an algorithm for performing the claimed function." Id. (quoting Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1367 (Fed. Cir. 2008)). Besides the specific example provided, the patent's disclosure of "*any processor* capable of performing the cryptographic operations desired" does not provide sufficient particularity to constitute a corresponding structure for this claim term.

At the hearing, SPEX emphasized the claim language itself as well as certain figures and disclosure in the patent specification for its proposed cryptographic processing device structure. SPEX's arguments about the claim language are unpersuasive, as this is a means-plus-function term. The parties have already agreed that the claim language is functional, non-structural language and the structure for the claim term must come from the specification. Meanwhile, Figure 8 only further confirms that there is insufficient structure disclosed for the cryptographic processing device to be corresponding structure for this term. In Figure 8, the cryptographic processing device 801 is identified by the label "CPU." Like the specification disclosure explaining that any processor may be programmed to perform the cryptographic operations of a cryptographic processing device, a depiction of a "central processing unit" leads to the same determination. Likewise, there is insufficient information about the interactions between the cryptographic processing device and other features to convey means plus function structure. Those interactions "[d]epend[] on the configuration of the interface control device 802, as determined by the operation of the peripheral device driver and/or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

by settings established during the manufacture of the peripheral device 800." '802 Patent at 16:64–67.

SPEX's proposed "security token" structure suffers from similar defects. The '802 Patent discloses:

> The security mechanism 302a can be, for example, embodied as a security token. Herein, "security token" refers to a device that performs security operations and that includes one or more mechanisms (such as, for example, use of a hardware random number generator and/or protected memory) to provide security for the content of those operations.

'802 Patent at 5:33–39. SPEX argues that a "security token" is a "special purpose device" for performing cited functions. SPEX Op. Br. at 10. But SPEX does not argue that a security token is a device well known in the art to have a particular corresponding structure. Further, the '802 Patent describes the security token generally and in terms of its functions (performing security operations).

At the hearing, SPEX argued that the patent disclosure "for example . . . a hardware random number generator and/or protected memory" supplied sufficient structure for security token. This is unpersuasive because these are simply two "examples" and do not themselves provide sufficient information as to structure.

For both security token and cryptographic processing device, SPEX argued at the hearing that the patent specification acknowledges these are terms known in the art. For security token, the specification states "[t]he security device 203 can be constructed so that the cryptographic functionality of the device 203 can itself be made secure. (Such a security device is often referred to as a security 'token.')" '802 Patent at 2:49–52. While this disclosure may indicate that the term security token is known in the art, it focuses on the functionality of the security token rather than recognizing a particular known

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

structure of a security token necessary for a means plus function claim. For cryptographic processing device, SPEX identifies a portion of the specification that states:

> A configuration of the security functionality that enables a particular cryptographic or mathematical operation can be produced, for example, by using appropriate existing cryptographic software, application-specific hardware, or combination of the two, as known by those skilled in the art of producing cryptographic devices.

'802 Patent at 17:55–61. This disclosure, however, indicates that cryptographic devices could, *for example*, contain particular software *or* hardware *or* a combination of the two. This disclosure thus provides no information about the structure of a cryptographic processing device sufficient for a means plus function term.

Accordingly, the Court adopts Defendants' structure proposals and construes the terms "security means for enabling one or more security operations to be performed on data" ('802 Patent, Claims 1, 6, 11, 23, 25) and "means for performing the one or more security operations" ('802 Patent, Claim 39) as

Recited Function:

enabling one or more security operations to be performed on data; performing the one or more security operations

Corresponding Structures:

1.  A specific hardware component programmed or configured to perform a security operation disclosed in '802 Patent at 18:1-47 or '135 Patent at 21:29-22:9;

2.  A special purpose embedded processor, embodied on a single integrated chip and designated as MYK-82 (and referred to by the name Capstone) ,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
|---|---|
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

which includes an ARM6™ processor core and several special purpose
cryptographic processing elements that have been developed by the
Department of Defense ('802 Patent at 15:67-16:8)

## V.   "security module that is adapted to enable one or more security operations to be performed on data" ('135 Patent, Claims 55, 57, 58)

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| This is not subject to 35 U.S.C. § 112(6) | Subject to 35 U.S.C. § 112(6) | Subject to 35 U.S.C. § 112(6) |
| If subject to 35 U.S.C. § 112(6), | Recited Function: (1) enabling security operations to be performed on data; (2) performing the security operations | Recited Function: enabling one or more security operations to be performed on data; performing the one or more security operations |
| Recited Function: enabling one or more security operations to be performed on data; performing the one or more security operations | | |
| Corresponding Structures: | Corresponding Structures: | Corresponding Structures: |
| Same as SPEX's proposal for "security means for enabling . . ." claim term | Same as Defendants' proposal for "security means for enabling . . ." claim term | 1.  A specific hardware component programmed or configured to perform a security operation disclosed in '802 Patent at 18:1-47 or '135 Patent at 21:29-22:9; |
| | | 2.  A special purpose embedded processor, embodied on a single integrated chip and designated as MYK-82 (and referred to by the name |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

| | | |
|---|---|---|
| | | Capstone) , which includes an ARM6™ processor core and several special purpose cryptographic processing elements that have been developed by the Department of Defense ('802 Patent at 15:67-16:8) |

SPEX asserts that the "security module . . ." term is not a means plus function term. SPEX Op. Br. at 11–12. SPEX argues that the '135 Patent refers to a security module as a hardware component of a modular device. Id. Defendants maintain that this term should be construed under § 112(6) consistent with the term "security means . . . ." Defendants Op. Br. at 11. Defendants emphasize that the Federal Circuit has referred to the term "module" as a "nonce word" "that is tantamount to using the word 'means.'" Id.; see also Defendants Resp. Br. at 7 (citing Williamson, 792 F.3d at 1351). Defendants also argue that the claims themselves refer to "security module" with purely functional language, making the application of § 112(6) appropriate. Defendants Resp. Br. at 7.

Claim 55 of the '135 Patent claims, *inter alia*, "the modular device comprising a security module that is adapted to enable one or more security operations to be performed on data . . . ." This language tracks the language of the means plus function term "security means for enabling one or more security operations . . . ." Claim 55 further recites the step of "operably connecting the security module . . . to the host computing device in response to an instruction from the host computing device." Even considering the "operably connecting" language in the claims, nothing on the face of Claim 55 requires that the security module be a physical piece of hardware as opposed to a piece of software (that can be operably connected to a host computing device).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

As Defendants note, unlike the term "circuit," the term "module" is a nonce word without any inherent structure. Williamson, 792 F.3d at 1351. In combination with the surrounding functional, non-limiting patent claim language, "security module" does not provide a person of skill in the art with any guidance as to its structure. Accordingly, the presumption has been overcome and "security module" is subject to § 112(6).

The patent specification also supports this conclusion. While the patent specification refers to the security module as a component of the modular device, there is no disclosure in the patent specification explicitly requiring that the "security module" be a structural, hardware component of the modular device. Indeed, many of the specification's references to "security module" simply track the claim language and describe the security module in functional terms. See, e.g., '135 Patent at 3:27–31 ("In particular, the modular device *can include a security module that is adapted to enable performance of one or more security operations on data*, and a target module that is adapted to enable a defined interaction with a host computing device."). In one example, the specification again focuses on the functional aspects of the security module: "[g]enerally, the security module 302a can be configured to perform any electronic data security operation (herein, referred to simply as a 'security operation')." '135 Patent at 7:13–15. While the specification refers to specific embodiments where the security module is a physical aspect of the modular device (see, e.g., '135 Patent at 7:41–45, label 411 in Figure 4B, label 610 in Figure 6), the '135 Patent does not specifically say the security module must be a configurable hardware component. In other words, the '135 Patent leaves open the possibility for a security module to be software.

The parties submit the same proposed § 112(6) structures for the term "security module" as the term "security means." The Court adopts Defendants' proposed structures for the same reasons stated above with respect to "security means."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al<br>   CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
| --- | --- |

**VI.    "operably connecting the security module and/or the target module to the host computing device in response to [an/the] instruction from the host computing device" ('135 Patent, Claims 55, 57, 58) and "means for operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device" ('802 Patent, Claims 1, 2, 6, 7)**

| SPEX's Construction | Defendants' Construction | Court's Construction |
| --- | --- | --- |
| "operably connecting . . .":<br><br>No construction necessary – plain and ordinary meaning. | "operably connecting . . .":<br><br>Operably connecting to the host computing device by selecting from three modes—a security module only mode, a target module mode, and a combined security and target module mode—in response to [an/the] instruction from the host computing device. | "operably connecting . . ."<br><br>No construction necessary |
| "means for operably connecting . . .": | "means for operably connecting . . .": | "means for operably connecting . . .":<br><br>Subject to 35 U.S.C. § |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. |
|---|---|
| | SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al |
| | SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al |
| | CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |

| Subject to 35 U.S.C. § 112(6) | Subject to 35 U.S.C. § 112(6) | 112(6) |
|---|---|---|
| <u>Recited</u> <u>Function</u>: operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device | <u>Recited</u> <u>Function</u>: operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device | <u>Recited</u> <u>Function</u>: operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device |
| <u>Corresponding</u> <u>Structures</u>: 1. PCMCIA interface and memory section 612a; 2. PCMCIA interface and a device or host driver; or 3. Equivalents thereof. | <u>Corresponding</u> <u>Structures</u>: PCMCIA interface and a device or host driver for operably connecting to the host computing device by selecting from three modes—a security means only mode, a target means only mode, and a combined security and target means mode—in response to an instruction from the host computing device. | <u>Corresponding</u> <u>Structures</u>: 1. PCMCIA interface and memory section 612a; or 2. Interface and a device or host driver. |

The parties' main dispute about the construction of the "operably connecting . . ." terms centers around Defendants' proposal of "operably connecting . . . *by selecting from three modes*." SPEX argues that Defendants are improperly importing both a "selection" limitation and a "three modes" requirement into the claims. SPEX Op. Br. at 17; <u>see</u> <u>also</u> SPEX Resp. Br. at 8–9. At the hearing, SPEX also proposed for the first time that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. |
|---|---|
| | SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al |
| | SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al |
| | CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |

second corresponding structure for the "means for operably connecting term" be "interface and a device or host driver" rather than "*PCMCIA* interface and a device or host driver."

SPEX acknowledges that the phrase "operably connecting the security module and/or the target module" means "operably connecting the security module to the host computing device *or* operably connecting the target module to the host computing device *or* operably connecting the security and target module to the host computing device." SPEX Resp. Br. at 8. But SPEX argues that the claims do not require a claimed device to always be capable of operating in all three modes. Id.

Defendants cite to written disclosure in the specification discussing Figure 7 to support their construction. Defendants Op. Br. at 14. Figure 7 "is a flow chart of a method 700, *according to an embodiment of the invention*, for using a modular device according to the invention." '135 Patent at 12:49–51. The patent proceeds to explain that "[a] modular device according to the invention that includes a security module and a target module can, *in general*, be operated in one of three modes." Id. at 13:38–40. The specification also states "[i]n the method 700, all three of the above-listed modes are available for use." Id. at 13:62–63. In other words, the '135 Patent explains that these three possible modes exist and those three modes are available in method 700, a specific disclosed embodiment. Contrary to Defendants' assertion, these statements in the specification do not *require* that all three modes are available for use in *all* embodiments of the invention.

Indeed, the specification further states,

in some applications, it may be desirable to inhibit operation in one or two of the modes. . . . This could be accomplished by implementing the modular device driver so that the option to operate in that mode is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al** **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

not presented to the user, or the modular device could be configured during manufacture to prohibit operation in that mode.

Id. at 13:46–57.

Defendants also argue that the prosecution history "precludes a construction that would allow connection via only one of the operational modes." Defendants Op. Br. at 14. Defendants, however, cite to language from the patent examiner, not the patent applicant. Defendants Op. Br., Ex. E at 90. More importantly, the cited prosecution history simply parrots back the claim language; it does not state that the claim requires three modes of operation. Id. ("Applicant's attorney agreed to incorporate this claimed limitation (means for operably connecting the security module and/or target module to the host computing device in response to an instruction from the host computing device).") To the extent they have merit (which the Court does not decide here), Defendants' other prosecution history arguments about the scope of this claim term in light of the existing prior art are better saved for an invalidity challenge than a claim construction analysis.

Defendants do not make separate arguments about the structure for the § 112(6) term "means for operably connecting . . ." in their opening brief. In its papers, SPEX noted that "[a]fter removal of Defendants' improper [three modes] limitation, the parties generally agree that one of the corresponding structures is the PCMCIA interface and a device or host driver (SPEX's second proposed corresponding structure)." SPEX Op. Br. at 19. As noted, at the hearing, SPEX revised its proposal for the second corresponding structure. SPEX argued that the "means for operably connecting . . ." term should be construed consistently with the "means for enabling" term. Specifically, SPEX argued that the patents refer to a variety of communication interfaces, not just PCMCIA interfaces, and it would thus be improper to limit the corresponding structure for this term. As to its first proposed structure, in its papers, SPEX argued that its other corresponding structure should also be adopted. Id. SPEX argued that the combination of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.<br>SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al<br>SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al<br>CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

a PCMCIA interface and memory section 612a allow a peripheral device to operably connect to the host computing device.  Id. (citing '802 Patent at 5:7–8, 7:60–8:14).

In their responsive brief, Defendants again argued that SPEX's proposal in general for both of these terms would impermissibly broaden the scope of the claim language by covering, for instance, a single operational mode of "target means" only or "security means" only. Defendants Resp. Br. at 10. Defendants did not otherwise explain why SPEX's proposed corresponding structure of a PCMCIA interface and memory section 612a is incorrect. At the hearing, Defendants also challenged SPEX's change of its other proposed corresponding structure.

The Court agrees with SPEX that the specification provides adequate disclosure for both of its proposed structures, as presented at the hearing. See '802 Patent at 5:7–8, 7:60–8:14; see also id. at 5:5–10 ("Generally, the communications interface **303** can be [] embodied by any of a variety of communication interfaces, such as wireless communications interface, a PCMCIA interface, a smart card interface, a serial interface (such as an RS-232 interface), a parallel interface, a SCSI interface or an IDE interface."), 5:10–21.

Accordingly, the Court finds no construction is necessary for the term "operably connecting the security module and/or the target module to the host computing device in response to [an/the] instruction from the host computing device" ('135 Patent, Claims 55, 57, 58).  The Court construes the term "means for operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device" ('802 Patent, Claims 1, 2, 6, 7) as follows:

Recited Function: operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device

Corresponding Structures:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

1. PCMCIA interface and memory section 612a; or

2. interface and a device or host driver.

**VII.   "means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means" ('802 Patent, Claims 1, 11, 23)**

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Subject to 35 U.S.C. § 112(6)<br><br>Recited Function: mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means<br><br>Corresponding Structures:<br><br>1. A field programmable gate array (FPGA). If an algorithm is | Subject to 35 U.S.C. § 112(6) and indefinite for lack of sufficient corresponding structure<br><br>Recited Function: mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means.<br><br>Corresponding Structures: | Subject to 35 U.S.C. § 112(6)<br><br>Recited Function: mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means<br><br>Corresponding Structures:<br><br>Interface control device 910 (as shown in Fig. 9B) |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |
|---|---|

| | | |
|---|---|---|
| necessary, the algorithm is (1) receiving data from host computing device; (2) depending on configuration settings, providing data to be processed by a cryptographic processor; and (3) transferring data to target means (see Fig. 9A, 16:58-17:7);<br><br>2. Interface control device 910 (as shown in Fig. 9B); or<br><br>3. Equivalents thereof. | The patent fails to provide sufficient corresponding structure; the structure it discloses is a specific hardware component limited to:<br><br>1. A field programmable gate array programmed to perform the steps at 16:57-17:15 of the '802 Patent; or<br><br>2. A device with the elements shown or described in Figure 9B and 17:25-51 of the '802 Patent and programmed to control the flow of data between the host computing device and the target means so that the communicated data must first pass through the security | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al     CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

| | means. The patent's disclosure is insufficient, however, because it fails to disclose how the devices are configured or programmed to perform the recited function. | |
|---|---|---|

The parties agree the "means for mediating . . ." term is governed by § 112(6), but Defendants argue that this term is indefinite because the '802 Patent fails to disclose sufficient structure. Defendants Op. Br. at 15.

Both parties agree that the '802 Patent discloses (1) a "field programmable gate array" (FPGA) ('802 Patent at 16:43–56) and (2) an interface control device ('802 Patent, Fig. 9B) as corresponding structure. Defendants argue, however, that since the specification fails to disclose an algorithm for these associated structures, the "means for mediating . . ." claim term is indefinite. Defendants Op. Br. at 16 (citing Williamson, 792 F.3d at 1352).

SPEX cites to its expert, Mr. Gomez, for the proposition that an FPGA is not a general purpose computer but "is a low-level device whose functionality is dependent on the environment in which it is integrated."  SPEX Op. Br. at 21 (citing Gomez Decl. ¶ 61). SPEX likewise argues that the interface control device in Figure 9B is not a general purpose computer ("Figure 9B is a circuit that is not programmable"). Id. at 21–22. Thus, SPEX concludes, an algorithm is not required for these corresponding structures. Id. SPEX alternatively argues that the '802 Patent adequately discloses an algorithm in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

written description accompanying Figure 9A. Id. at 22 (citing '802 Patent at 16:58–17:7).

Defendants cite to the patent specification, which states an FPGA must be "programmed to perform the functions that it is desired to implement." Defendants Op. Br. at 16 (citing '802 Patent at 16:45–47). For interface control device, Defendants assert that the specification discloses only an FPGA, and thus the same problem persists. Id. (citing '802 Patent at 16:43–48 ("In one embodiment of the peripheral device 800, the interface control device 802 is a conventional field programmable gate array (FPGA) that is programmed to perform the functions that it is desired to implement.")). Defendants also urge the Court to disregard Mr. Gomez's testimony because it "cannot supplant the total absence of structure from the specification." Defendants Op. Br. at 17 (citing Williamson, 792 F.3d at 1354)). In their responsive brief, Defendants further emphasize that the interface control devices of Figures 8, 9A, and 9B of the '802 Patent do not disclose sufficient corresponding structure because "the recited functions are achieved by programming and configuration parameters." Defendants Resp. Br. at 11.

Given the specification's disclosure that an FPGA must be "programmed to perform the function that it is desired to implement" ('802 Patent at 16:45–47), but a lack of corresponding algorithm, the Court agrees with Defendants that there is insufficient specificity disclosed in the specification to support the FPGA structure.

SPEX's argument that an FPGA was known in the art at the time of the invention does not change this outcome. Here, where the Court is evaluating corresponding structures at the second step in the § 112(6) analysis, it must ensure that there is sufficient structure disclosed in the patent specification that a person of skill in the art could practice the claimed invention. Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1347 (Fed. Cir. 2015) ("In enacting this provision, Congress struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof."); Cf  Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1319 (Fed. Cir. 2004) (analyzing whether the term "circuit" in the claim itself is subject to § 112(6) analysis at all). The specification here tells a person of skill in the art that an FPGA must be programmed to perform its desired function. Yet, the '802 Patent does not adequately describe how that programming can be achieved.

SPEX argues that even if an algorithm is required, the specification discloses an algorithm. SPEX Op. Br. at 22 (citing '802 Patent at 16:58–17:7). SPEX's cited portions of the specification fail to provide sufficient specificity to support this claim term. For instance, the portion of the specification states

> [d]epending on the configuration of the interface control device 802, as determined by operation of the peripheral device driver and/or by settings established during the manufacture of the peripheral device 800, the data may or may not be processed by the cryptographic processing device 801.

'802 Patent at 16:64–17:2. In other words, the specification provides that the "configuration of the interface control device 802" is dependent on many factors, including settings during manufacture, that "may or may not" lead the cryptographic processing device to also process the data. Id. Given the ambiguity in the specification, in the context of a means plus function analysis, this disclosure provides insufficient corresponding structure.

As to "interface control device," in its papers, SPEX did not seek to construe the "means for mediating . . ." term so that one of the supporting structures is an interface control device generally. Instead, SPEX proposed "interface control device 910," as shown in Figure 9B:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |



FIG. 9B

Figure 9B is dedicated to setting out components of an exemplary interface control device 910 and that device's relationship to surrounding interfaces.

Defendants argue that Figure 9B "can be embodied in a FPGA" and that the patent "does not disclose any alternative structure." Defendants Op. Br. at 18. In their response brief, Defendants further comment that the "data stored in configuration registers . . . establish operating characteristics of the interface control device." Defendants Resp. Br. at 12 (citing '802 Patent at 17:25–36).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |
|---|---|

Aside from whether or not Figure 9B must be embodied in a FPGA, Defendants do not address the fact that Figure 9B provides particularized disclosure of component parts, i.e. structure, for interface control device 901. Unlike the general disclosure of an FPGA as requiring programming to perform its intended function, Figure 9B sets out detailed information about interface control device 901.

As to Defendants' argument in their reply brief that Figure 9B still requires too many programming and configuration parameters to recite sufficient structure, Defendants omit additional language in the specification that states,

> in particular, the content of the configuration registers enables the interface control device to present to the host computing device a desired identification of the peripheral device, and determines whether data passing through the peripheral device must be subjected to security operations.

'802 Patent at 17:25–36. While this disclosure does indicate some level of individual configuration, unlike the generally disclosed FPGA, a person of skill in the art has significant additional details about the interactions between the component parts of the interface control device 910 with corresponding structure as a result of Figure 9B itself. Given the specific details provided in this disclosure, Defendants have not proven by clear and convincing evidence that the structure of interface control device 901 is inadequately disclosed by the patent specification.

Accordingly, the Court construes this term as

Subject to 35 U.S.C. § 112(6)

Recited Function: mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means

Corresponding Structures:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al**<br>   **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

Interface control device 910 (as shown in Fig. 9B).

**VIII. "means for providing to a host computing device, in response to a request from the host computing device for information regarding the type of peripheral device, information regarding the function of the target means" ('802 Patent, Claims 6, 7, 23, 25)**

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Subject to 35 U.S.C. § 112(6)<br><br>Recited Function: providing to a host computing device, in response to a request from the host computing device for information regarding the type of the peripheral device, information regarding the function of the target [means]<br><br>Corresponding Structures:<br><br>1. Memory section 612a; or | Subject to 35 U.S.C. § 112(6) and indefinite for lack of sufficient corresponding structure<br><br>Recited Function: providing to a host computing device in response to a request from the host computing device for information regarding the type of the peripheral device, information regarding the function of the target means.<br><br>Corresponding Structures: | Subject to 35 U.S.C. § 112(6) and indefinite for lack of sufficient corresponding structure |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

| 2. Equivalents thereof | None. | |
| | The patent's disclosure is insufficient because it fails to disclose sufficient structure for providing information about a "target means" in response in response to a request for information about a "peripheral." | |

Like the "means for mediating . . ." term, Defendants argue the "means for providing . . . in response to a request . . . for information regarding the type of peripheral device . . . information regarding the function of the target means" term is indefinite because the patent specification fails to disclose sufficient structure. Defendants Op. Br. at 18. Defendants emphasize that in the context of means plus function terms, "material incorporated by reference cannot provide the corresponding structure necessary to satisfy the definiteness requirement." Id. (citing Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc., 412 F.3d 1291, 1301 (Fed. Cir. 2005)). Defendants argue the '135 Patent discloses a structure for providing the host computing device with "target module identification information" in response to a request for "modular device information." Id. at 19. However, state Defendants, the '802 Patent does not disclose any structure to perform a comparable function. Id. at 18.

SPEX argues that the specification discloses "how information identifying the target functionality of the device is provided in a known memory section (labeled 612a) and is provided to the host computing device when it seeks information identifying the peripheral device." SPEX Op. Br. at 23 (citing '802 Patent at 7:60–8:14). SPEX emphasizes that "[i]n the paragraph following the disclosure of memory section 612a, the specification discloses that the peripheral device can assume the identity of the target

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>   **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

functionality." SPEX Resp. Br. at 11 (citing '802 Patent at 8:15–17). SPEX asserts that in these circumstances, a person of skill would understand that "memory section 612a would provide information about the target functionality, not the peripheral device functionality." Id. at 11–12.

At the claim construction hearing, SPEX presented two main arguments. First, it again emphasized the '802 Patent's disclosure and argued that a person of skill in the art would understand that the patent disclosed means for providing to a host computing device information regarding the function of the target means in response to a request from the host computing device for information regarding the type of peripheral device. SPEX also referred to the testimony of its expert, Mr. Gomez.  SPEX further proposed to modify the corresponding structure in its proposed construction to "peripheral device identification data stored in memory section 612a (a known memory section of a memory device of the peripheral device, as established by an interface standard for that type of peripheral device)" to make it "consistent with" the '802 Patent's disclosure.

Second, SPEX argued that relevant Federal Circuit case law and regulatory codes demonstrate that material incorporated by reference can provide the corresponding structure for a § 112(6) claim term. Specifically, SPEX referred the Court to Otto Bock HealthCare LP v. Ossur HF, 557 F. App'x 950 (Fed. Cir. 2014) and 37 C.F.R. 1.57.

Taking SPEX's arguments in reverse, the Code of Federal Regulations sets out particular requirements for the USPTO in reviewing and granting patent applications. While the Court is not bound by these regulations, it finds them instructive as it begins its analysis. Title 37, section 1.57 allows patentees to incorporate other documents by reference, subject to particular requirements. Specifically, section (c) states that an incorporation by reference "must be set forth in the specification," "[e]xpress a clear intent to incorporate by reference," and "[c]learly identify the referenced patent, application, or publication." 37 C.F.R. § 1.57(c). Section (d) further states that "'[e]ssential material' may be incorporated by reference, but only by way of an incorporation by reference to a U.S. patent or U.S. patent application publication." 37

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.<br>SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al<br>SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al<br>CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

C.F.R. § 1.57(d). Essential material includes "structures, material, or acts that correspond to a claimed means or step for performing a specified function as required by 35 U.S.C. 112(f)." 37 C.F.R. § 1.57(d)(3).

Meanwhile, case law relating to incorporation by reference supports the precept that to incorporate material by reference, "the host document must identify with *detailed particularity* what specific material it incorporates . . . ." Zenon Envtl., Inc. v. U.S. Filter Corp., 506 F.3d 1370, 1378–79 (Fed. Cir. 2007) (quoting Cook Biotech Inc. v. Acell, Inc., 460 F.3d 1365, 1376 (Fed.Cir.2006)). Whether material has been incorporated by reference into a host document is a question of law. Id.

The Court need not reach the issue of whether, as a general matter, a patent or patent publication incorporated by reference may either be the sole structure or add additional structures to a means plus function claim term. Compare Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1381 (Fed. Cir. 1999) and Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc., 412 F.3d 1291, 1301 (Fed. Cir. 2005) with Otto Bock HealthCare LP v. Ossur HF, 557 F. App'x 950 (Fed. Cir. 2014) (non-precedential). Here, the '802 Patent's incorporation by reference suffers from two preliminary defects that make consideration of the '135 Patent for disclosure of corresponding structure inappropriate.

First, unlike Otto Bock, where the host patent specification identified with detailed particularity the material to be incorporated, Otto Bock, 557 F. App'x at 955 ("a vacuum reservoir 110, or a weight-actuated vacuum pump and shock absorber as disclosed in [the #274 application]"), the '802 Patent does not identify the particular corresponding structure that Plaintiff seeks to add here. Second, and more importantly, the '802 Patent's incorporation by reference paragraph fails to sufficiently identify the '135 Patent. In a section titled "Cross Reference to Related Application," the '802 Patent states,

This application is related to the commonly owned, co-pending United States patent Application entitled "Modular Security Device," by William P. Bialick, Mark J. Sutherland, Janet L. Dophin-Peterson, Thomas K. Rowland, Kirk W. Skeba and Russell D. Housley, filed on the same date as the present

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>   **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

application and having Attorney Docket No. SPY-003, the disclosure of which is incorporated by reference herein.

'802 Patent at 1:6–13. This statement does not include a number for a patent or a patent application publication, as 37 C.F.R. § 1.57(d) requires for incorporation of "essential material." Indeed, there is not even an application number for the application that eventually resulted in the '135 Patent. The Court thus finds that the '802 Patent does not adequately incorporate by reference corresponding structure in the '135 Patent for this claim term.

The '802 Patent states:

One way in which the operating system software of a host computing device can identify the type of a peripheral device is to access a known memory section of a memory device of the peripheral device, as established by an interface standard developed for that type of peripheral device, *that stores data representing the type of the peripheral device*.

'802 Patent at 7:62–8:1. The '802 Patent further explains that

[t]he memory section of the memory device 612 of the peripheral device 602 which the host computing device 601 seeks to access is shown in FIG. 6 as the memory section 612a, *and the data stored therein is referred to herein as "peripheral device identification data."*

Id. at 8:9–14. Plaintiff is correct that the next paragraph of the specification states:

The peripheral device 602 can be implemented *so that the peripheral device 602 assumes the identity of the target functionality 614* (whether or not the security functionality of the peripheral device is also being used). This enables the host computing device 601 to interact with the peripheral device 602 as though the peripheral device 602 were a device of the type of the target functionality 614 . . . .

Id. at 8:15–21. This disclosure, however, does not provide that the memory section 612a stores information about the function of the target means, let alone provides information about the function of the target means in response to a request from the host computing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al  CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

device. Indeed, this paragraph of the specification does not reference 612a. This disclosure is in contrast to the '135 Patent, which similarly discloses a memory section 612a, but explicitly states that target module identification data is stored in memory section 612a. See '135 Patent at 11:32–39. SPEX's arguments at the hearing on this issue were unpersuasive for the same reasons.

Given the '802 Patent's failure to disclose sufficient structure for this term, the Court finds it is indefinite.

**IX.   "means for enabling communication with a host computing device" ('802 Patent, Claims 1, 2, 6, 7, 11, 12, 23, 25)**

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Subject to 35 U.S.C. § 112(6)  Recited Function: enabling communication with a host computing device  Corresponding Structures:  1. Input/Output (I/O) device;  2. PCMCIA interface  3. Cord between housing and matching receptacle;  4. Wireless communication interface;  5. Smart card interface;  6. Serial interface (such as RS-232) | Subject to 35 U.S.C. § 112(6)  Recited Function: enabling communication with a host computing device  Corresponding Structures: a wireless communications interface, a PCMCIA interface, a smart card interface, a serial RS-232 interface, a SCSI interface, or an IDE interface | Subject to 35 U.S.C. § 112(6)  Recited Function: enabling communication with a host computing device  Corresponding Structures:  1. Input/Output (I/O) device;  2. PCMCIA interface;  3. Cord between housing and mating receptacle;  4. Wireless communications interface;  5. Smart card interface;  6. Serial interface (such as RS-232) |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. <br> SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al <br> SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al <br>  CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

| | | |
|---|---|---|
| 7. Parallel interface; <br><br> 8. SCSI interface; <br><br> 9. IDE interface; or <br><br> 10. Equivalents thereof. | | 7. Parallel interface; <br><br> 8. SCSI interface; or <br><br> 9. IDE interface. |

In their response brief, SPEX asserts that the Court need not construe this term. SPEX Resp. Br. at 13 n.11. Defendants seek a construction of this term as one of their "most significant terms." Defendants Resp. Br. at 9. The parties agree that this term is subject to § 112(6). At the hearing, both parties submitted on the Court's tentative proposed construction for this term.

In their opening brief, Defendants argued that "parallel interface," "serial interface," "Input/Output (I/O) device," wireless communication interface," and "cord" are "generic, unspecified structures that are legally insufficient to meet the requirements for 112(6)." Defendants Op. Br. at 24. Defendants did not provide any legal or factual citations for most of these assertions. See also Defendants Resp. Br. at 9. Further, Defendants' proposed construction includes the structure "wireless communication interface," which Defendants challenged in their opening brief. See Defendants Resp. Br. at 9–10 (Defendants do not maintain their argument that a "wireless communication interface" is not a sufficient structure).

The specification states:

Generally, the communications interface 303 can be any embodied by any of a variety of communication interfaces, such as a wireless communications interface, a PCMCIA interface, a smart card interface, a serial interface (such as an RS-232 interface), a parallel interface, a SCSI interface or an IDE interface. . . . Each embodiment of the communications interface 303

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

also includes mechanisms to enable physical engagement, if any, between the host computing device 301 and peripheral device 302.

'802 Patent at 5:5–21. With respect to the Input/Output (I/O) device, the specification states:

> The host computing device 601 also includes . . . an input/output (I/O) device 608 for enabling communication with peripheral device 602. . . . The peripheral device 602 includes . . . an input/output (I/O) device 613 for enabling communication with the host computing device 601.

'802 Patent at 6:28–40. The only evidentiary citation Defendants provided relates to whether a "cord" is a corresponding structure. Defendants Resp. Br. at 10 (citing '802 Patent at 7:2–5)). The specification states:

> a user of the system connects a peripheral device according to the invention to a host computing device. *Such connection can occur in any manner that enables the peripheral device to communicate with the host computing device.* Frequently, this will occur as a result of a physical connection . . . . For example, the peripheral device can be embodied in a card or disk (e.g., a card conforming to a PCMCIA form factor[)] . . . . Or, the peripheral device can be embodied in a housing from which a cord extends, a plug of the cord being inserted into a mating receptacle formed in the host computing device.

'802 Patent at 6:53–7:5 (emphasis added). Contrary to Defendants' arguments, the specification thus discloses a cord as a means for enabling a peripheral device to communicate with a host computing device. As SPEX noted, this same paragraph also refers to connecting the peripheral device and host computing device through PCMCIA or wireless communication, two structures the parties agree on. See SPEX Op. Br. at 16. The Court is not persuaded by Defendants' argument that including a "cord" would also require the Court to include the "air" as the medium over which wireless communication occurs. See Defendants Resp. Br. at 10. Without further explanation, the Court finds that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al**<br>  **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

a cord falls into the same category as the specification's other disclosed structures for this term.

As the excerpts above show, the specification discloses an Input/Output (I/O) device, cord between a housing and a mating receptacle, PCMCIA interface, Wireless communication interface, Smart card interface, Serial interface (such as RS-232), Parallel interface, SCSI interface, and IDE interface as corresponding structure for enabling communication with a host computing device.

Accordingly, the Court construes "means for enabling communication with a host computing device" as follows:

<u>Recited Function</u>: enabling communication with a host computing device

<u>Corresponding Structures</u>:

1. Input/Output (I/O) device;

2. PCMCIA interface;

3. Cord between housing and mating receptacle;

4. Wireless communications interface;

5. Smart card interface;

6. Serial interface (such as RS-232)

7. Parallel interface;

8. SCSI interface; or

9. IDE interface.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

**X.    "providing to the host computing device, in response to the request, information regarding the type of the defined interaction" ('802 Patent, Claim 38) and "providing the type of the target module to the host computing device in response to the request" ('135 Patent, Claims 55, 56)**

| SPEX's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| "providing to the host computing device . . ." <br><br> No construction necessary | "providing to the host computing device . . ." <br><br> In response to the request for one type of information (i.e., information regarding the type of the peripheral device), providing to the host computing device different information (i.e., information about the type of defined interaction). <br><br> As previously indicated, however, the term "defined interaction" is indefinite, thus rendering this term indefinite | "providing to the host computing device . . ." <br><br> No construction necessary |
| "providing the type of the target module . . ." <br><br> No construction necessary | "providing the type of the target module . . ." <br> In response to the request for one type of information (i.e., information regarding the type of the modular device), providing different information (i.e., information about the type | "providing the type of the target module . . ." <br><br> No construction necessary |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.**<br>**SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al**<br>**SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al**<br>**CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

| of target module). | |
|---|---|

Defendants argue that their proposals "simply make clear what the plain language of the claims requires." Defendants Op. Br. at 20. SPEX argues that Defendants are improperly attempting to introduce the limitation "that the information requested must be different than the provided information." SPEX Op. Br. at 24. SPEX argues that "[n]o clear and unambiguous disclaimer supports Defendants' proposal." Id. At the hearing, both parties submitted on the Court's tentative proposed construction for this term.

Claim 38 of the '802 Patent states:

38.    For use in a peripheral device adapted for communication with a host computing device, performance of one or more security operations on data, and interaction with a host computing device in a defined way, a method comprising the steps of:
          receiving a request from a host computing device for information
               regarding the type of the peripheral device; and
     providing to the host computing device, in response to the request,
               information regarding the type of the defined interaction.

The Court has construed the terms "modular device," "peripheral device," and "defined interaction." Claim 38, for example, is clear on its face that in response to a request for information regarding the type of the peripheral device, the peripheral device provides information regarding the type of the defined interaction. The same concept is true for Claims 55 of the '135 Patent ("receiving a request . . . for information regarding the type of the modular device; providing the type of the target module to the host computing device in response to the request"). No further construction is necessary.

**CONCLUSION**

| Claim Term | Court's Construction |
|---|---|
| "defined interaction" ('802 Patent, Claims 1, 6, 11, 23, 38, 39; '135 | "an interaction [with a host computing device] that can provide |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date    October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

| | |
|---|---|
| Patent, Claims 55, 57, 58); "interaction with a host computing device in a defined way" ('802 Patent, Claims 38, 39) | one or more of a variety of functionalities" |
| "peripheral device" ('802 Patent, Claims 1, 2, 6, 7, 11, 12, 23, 25, 38, 39) | "a device that operates functionally separate from a host computing device and that is connected to the host computing device, including such devices in the same housing as the host computing device" |
| "modular device" ('135 Patent, Claims 55, 57, 58) | "a device that operates functionally separate from a host computing device and that is connected to the host computing device, including such devices in the same housing as the host computing device" |
| "security means for enabling one or more security operations to be performed on data" ('802 Patent, Claims 1, 6, 11, 23, 25); "means for performing the one or more security operations" ('802 Patent, Claim 39); "security module that is adapted to enable one or more security operations to be performed on data" ('135 Patent, Claims 55, 57, 58) | Subject to 35 U.S.C. § 112(6) Recited Function: enabling one or more security operations to be performed on data; performing the one or more security operations Corresponding Structures: 1.  A specific hardware component programmed or configured to perform a security operation disclosed in '802 Patent at 18:1-47 or '135 Patent at 21:29-22:9; |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Date   October 18, 2017

| Case No. and Title | SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al. SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn |
|---|---|

|  | 2.  A special purpose embedded processor, embodied on a single integrated chip and designated as MYK-82 (and referred to by the name Capstone) , which includes an ARM6$^{TM}$ processor core and several special purpose cryptographic processing elements that have been developed by the Department of Defense ('802 Patent at 15:67-16:8) |
|---|---|
| "operably connecting the security module and/or the target module to the host computing device in response to [an/the] instruction from the host computing device" ('135 Patent, Claims 55, 57, 58) | No construction necessary |
| "means for operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device" ('802 Patent, Claims 1, 2, 6, 7) | Subject to 35 U.S.C. § 112(6)<br><br>Recited Function: operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device<br><br>Corresponding Structures:<br><br>1.  PCMCIA interface and memory section 612a; or |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| | |
|---|---|
| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** <br> **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** <br> **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc., et al** <br> **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

| | |
|---|---|
| | 2. Interface and a device or host driver. |
| "means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means" ('802 Patent, Claims 1, 11, 23) | Subject to 35 U.S.C. § 112(6) <br><br> <u>Recited</u> <u>Function</u>: mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means <br><br> <u>Corresponding</u> <u>Structures</u>: <br><br> Interface control device 910 (as shown in Fig. 9B) |
| "means for providing to a host computing device, in response to a request from the host computing device for information regarding the type of peripheral device, information regarding the function of the target means" ('802 Patent, Claims 6, 7, 23, 25) | Subject to 35 U.S.C. § 112(6) and indefinite for lack of sufficient corresponding structure |
| "means for enabling communication with a host computing device" ('802 Patent, Claims 1, 2, 6, 7, 11, 12, 23, 25) | Subject to 35 U.S.C. § 112(6) <br><br> <u>Recited</u> <u>Function</u>: enabling communication with a host computing device <br><br> <u>Corresponding</u> <u>Structures</u>: <br><br> 1. Input/Output (I/O) device; <br><br> 2. PCMCIA interface |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Date   October 18, 2017

| Case No. and Title | **SACV 16-01790 JVS(AGRx): SPEX Technologies, Inc. v. Kingston Technology Corp., et al.** |
|---|---|
| | **SACV16-01799 JVS(AGRx): SPEX Technologies, Inc. v. Western Digital Corporation, et al** |
| | **SACV16-01800 JVS(AGRx): SPEX Technologies, Inc. v. Toshiba America Electronics Components Inc.,  et al** |
| | **CV16-07349 JVS(AGRx): SPEX Technologies, Inc. v. Apricorn** |

| | 3. Cord between housing and mating receptacle;<br><br>4. Wireless communication interface;<br><br>5. Smart card interface;<br><br>6. Serial interface (such as RS-232)<br><br>7. Parallel interface;<br><br>8. SCSI interface; or<br><br>9. IDE interface. |
|---|---|
| "providing to the host computing device, in response to the request, information regarding the type of the defined interaction" ('802 Patent, Claim 38);<br><br>"providing the type of the target module to the host computing device in response to the request" ('135 Patent, Claims 55, 56) | No construction necessary |

0       :      00

Initials of Preparer            kjt

52