1    CHRISTOPHER D. BRIGHT (SBN 206273)
     christopher.bright@morganlewis.com
2    MORGAN, LEWIS & BOCKIUS LLP
     600 Anton Boulevard, Ste. 1800
3    Costa Mesa, CA 92626
     Tel: 714.830.0600
4    Fax: 714.830.0700

5    HERSH MEHTA (*admitted pro hac vice*)
     hersh.mehta@morganlewis.com
6    MORGAN, LEWIS & BOCKIUS LLP
     77 West Wacker Drive
7    Chicago, IL 60601
     Tel: 312.324.1739
8    Fax: 312.324.1001

9    Attorneys for Defendant
     APRICORN
10

11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

15   SPEX TECHNOLOGIES, INC.              )   CASE NO.: 2:16-CV-07349 JVS
                                          )   (ARGx)
16          Plaintiff                     )
                                          )
17          v.                            )   Hon. James V. Selna
                                          )
18   APRICORN                             )
                                          )   **APRICORN'S OPPOSITION TO**
19          Defendant,                    )   **PLAINTIFF'S MOTION TO**
                                          )   **STRIKE APRICORN'S**
20                                        )   **NONINFRINGING**
                                          )   **ALTERNATIVES PURSUANT TO**
21                                        )   **RULE 37(C)(1)**
                                          )
22                                        )
                                          )
23                                        )
                                          )
24                                        )
     _____ )
25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 3

    A.    SPEX admits to noninfringing alternatives, Apricorn gives notice of its intention to rely on those admissions, and SPEX's and Apricorn's technical and damages experts address the noninfringing alternatives ........................................................... 3

    B.    Meanwhile during fact discovery, SPEX refuses to answer Apricorn's discovery on SPEX's real infringement theory for the "means for mediating …" ........................................................... 6

III.  LEGAL STANDARD ......................................................................................... 7

IV.   ARGUMENT ...................................................................................................... 8

    A.    Apricorn discharged its duty (if any) to timely disclose noninfringing alternatives during fact discovery ............................... 8

    B.    Apricorn timely disclosed expert opinions regarding noninfringing alternatives in expert reports and SPEX's own experts address the noninfringing alternatives ...................................... 9

    C.    SPEX's complaints about the Apricorn fact witness identifications are meritless ................................................................. 13

V.    CONCLUSION ................................................................................................. 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*,
No. CIV. 10-3785, 2012 WL 3612035 (D. Minn. Aug. 21, 2012) ...................8, 9

*Papst Licensing GMBH & Co., KG v. Samsung Electronics Co., Ltd. et al.*
Case No. 6:18-CV-00388-RWS, Dkt. 229 (E.D. Tex. Oct. 25, 2018)............7, 12

*Smart Skins, LLC v. Microsoft Corp.*
No. C15-554-MJP, 2016 WL 4148091 (W.D. Wash. July 1, 2016).........7, 11, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

ii

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

## I.    INTRODUCTION

SPEX's motion to strike Apricorn's noninfringing alternatives should be denied.  Early in this case in December 2016, SPEX admitted to two categories of noninfringing alternatives.  The noninfringing alternatives at issue in this motion ties back to those admissions by SPEX early in this case.  Apricorn disclosed its reliance on those very noninfringing alternatives in its interrogatory responses in March 2017 almost fully a year before expert reports and almost fully a year before Apricorn's Rule 30(b)(6) deposition on noninfringing alternatives in February 2018.  Both parties' experts addressed noninfringing alternatives in opening expert reports and then Apricorn's experts addressed them again in rebuttal expert reports.

Early in this case, SPEX admitted that "there are numerous ways the abstract idea of 'securing secret information' could be practiced without infringing the patents-in-suit."  Dkt. 27 at 20:12-14 (SPEX's brief dated December 19, 2016). SPEX admitted to two categories of noninfringing alternatives.  According to SPEX, "For example, the security functionality could be (and is in many non-accused products) implemented in *software* rather than hardware.  Such a device would not meet the security means limitation of the claims of the patents-in-suit." *Id.* at 20:14-17 (emphasis added).

SPEX's motion to strike misleadingly represents that such "software" security was "the only purported alternative even arguably disclosed by Apricorn" at the time that Apricorn gave its Rule 30(b)(6) deposition.  Dkt. 168-1 at 2:22-25. On the contrary, Apricorn had already disclosed its reliance on the second category of noninfringing alternative previously admitted by SPEX.  Again, in December 2016 well before Apricorn's Rule 30(b)(6) deposition (in February 2018), SPEX admitted to another category of noninfringing alternative.  SPEX admitted that "As another example, devices *without mediating means*, such as those in the prior art, would not practice a number of the claims."  Dkt. 27 at 20:17-19 (SPEX's brief dated December 19, 2016) (emphasis added).  Almost fully a year before opening

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

1

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

expert reports were due in this case, Apricorn put SPEX on notice in Apricorn's interrogatory responses (dated March 2017) that Apricorn intended to rely on these two categories of noninfringing alternatives admitted by SPEX.  Dkt. 168-4 at 14:12-15 ("SPEX has admitted in this case that there are purportedly commercially acceptable and available non-infringing alternatives to the Accused Products with respect to the patents-in-suit (see SPEX's Document No. 27 filed in this case).").  Then still about four weeks before opening expert reports when SPEX took Apricorn's Rule 30(b)(6) designee on noninfringing alternatives, SPEX deliberately chose not to ask Apricorn's designee any questions about category two of SPEX's admitted noninfringing alternatives, i.e., alternatives to using the "mediating means" in the remaining asserted patent claims.  Yet SPEX's own technical expert addressed both of these very two categories of admitted noninfringing alternatives in his opening expert report.  Bright Decl. Ex. 1 at 94, ¶ 252 ("… SPEX's brief [Dkt. No. 27 dated December 19, 2016] discusses software encryption, as opposed to hardware encryption, and devices without mediating means, but a person of ordinary skill would not consider either of those an acceptable alternative.").

Putting aside the noninfringing alternatives that applied to the '135 patent dropped by SPEX during IPR or claims invalidated during IPR of the remaining asserted '802 patent,[1] SPEX's motion seeks to preclude Apricorn from relying on noninfringing alternatives denominated "Design Option 13" and another "Initio chip design."  Dkt. 168-1 at 7:3-8:15.  Each of these implementations are captured by the two categories of the noninfringing alternatives admitted by SPEX early in the case in its filing in Docket No. 27 (which Apricorn also disclosed in its March 2017 interrogatory responses).  "Design Option 13" is an implementation of not using the "mediating means" which SPEX admitted was a noninfringing alternative

---

[1] As SPEX knows from Apricorn's expert report, many of these other design options related to claims of the '135 patent (dropped by SPEX) or claims 38 and 39 of the '802 patent which were invalidated by the PTAB during IPR.  *E.g.*, Dkt. 178-4 at 77-78, ¶ 190 ("Design option 9" for claim 38 of the '802 patent and claim 55 of the '135 patent).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
DB2/ 37976443.5

2

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

early in the case.  Dkt. 27 at 20:17-19.  "Design Option 13" is set forth in Apricorn's interrogatory response almost two weeks before opening expert reports were due.  Dkt. 178-2 at 13:21-28.  "Design Option 13" was prepared by Apricorn's expert and adopted in his opening expert report.  Dkt. 168-10 at 308.  Moreover, although not acknowledged by SPEX's motion to strike, SPEX's own technical expert analyzed Apricorn's noninfringing alternatives, including "Design Option 13", in his own expert report.  Bright Decl. Ex. 1 at 94-96 ("Devices lacking a mediating means would also pose significant risk absent any hardware that would ensure that data must first pass through the security means ... Design Options 2, & 4-11, 13-14 are also insufficient ...").  The other alternative, another "Initio chip design", is an implementation of "software" encryption (rather than hardware encryption) which SPEX admitted early in the case was a noninfringing alternative. Dkt. 27 at 20:14-17.  SPEX's technical expert also addresses software as a noninfringing alternative in his opening expert report.  Bright Decl. Ex. 1 at 94, ¶ 252 ("... hardware encryption is superior to software encryption because it is faster, provides higher levels of security, and is much harder to hack ...).

In sum, SPEX admitted to the noninfringing alternatives early in the case; Apricorn's interrogatory responses notified SPEX of Apricorn's intention to rely on those admissions by SPEX; Apricorn presented a Rule 30(b)(6) deposition witness to testify on those alternatives; Apricorn's expert provided an opening expert report adopting the alternatives; and SPEX's own experts provided opening expert reports addressing the alternatives.  Apricorn discharged its duty (if any) to provide discovery on the alternatives to SPEX, and SPEX has suffered no prejudice as it has its own expert opinions addressing the alternatives.  SPEX's motion to strike should be denied.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

3

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

## II.   FACTUAL BACKGROUND

   A.   **SPEX admits to noninfringing alternatives, Apricorn gives notice of its intention to rely on those admissions, and SPEX's and Apricorn's technical and damages experts address the noninfringing alternatives.**

*December 19, 2016*:  SPEX admits to two categories of noninfringing alternatives.  Dkt. 27 at 20:12-19 ("Even limiting the context to computer inventions, there are numerous ways the abstract idea of 'securing secret information' could be practiced without infringing the patents-in-suit. For example, the security functionality could be (and is in many non-accused products) implemented in software rather than hardware. Such a device would not meet the security means limitation of the claims of the patents-in-suit. As another example, devices without mediating means, such as those in the prior art, would not practice a number of the claims.").

*March 17, 2017*:  Apricorn put SPEX on notice in Apricorn's interrogatory responses that Apricorn intended to rely on these two categories of noninfringing alternatives admitted by SPEX.  Dkt. 168-4 at 14:12-15 ("SPEX has admitted in this case that there are purportedly commercially acceptable and available non-infringing alternatives to the Accused Products with respect to the patents-in-suit (see SPEX's Document No. 27 filed in this case).").

*February 15, 2018*:  As SPEX acknowledges, "Apricorn designated its founder and president Paul Brown to provide testimony concerning Topic 19 (noninfringing alternatives)."  Dkt. 168-1 at 2:12-19.  As SPEX further acknowledges, SPEX takes the deposition of Mr. Brown and only asks about "use of software encryption instead of hardware encryption."  *Id.* at 2:22-25.  Inexplicably, SPEX did not ask about Apricorn's March 2017 interrogatory response identifying "alternatives" (plural), specifically that "SPEX has admitted in this case that there are purportedly commercially acceptable and available non-

1   infringing *alternatives* to the Accused Products with respect to the patents-in-suit

2   (see SPEX's Document No. 27 filed in this case)." Dkt. 168-4 at 14:12-15

3   (emphasis added). Nor did SPEX show Mr. Brown during deposition "SPEX's

4   Document No. 27 filed in this case" in which SPEX admitted that "As another

5   example, devices without mediating means, such as those in the prior art, would not

6   practice a number of the claims." Dkt. 27 at 20:17-19.

7        *March 6, 2018*: Consistent with SPEX's admission regarding noninfringing

8   alternatives to using the "mediating means," as prepared by Dr. Mark Jones, the

9   technical expert offered by Apricorn, Apricorn discloses "Design Option 13" which

10  recites that "Apricorn could employ a hardware architecture in which 'data' isn't

11  required to first pass through a security module or means …" Dkt. 178-2 at 13:21-

12  28.

13       *March 15-19, 2018*: SPEX writes about Apricorn's interrogatory responses

14  regarding noninfringing alternatives. Dkt. 168-9. SPEX's position was that SPEX

15  will "move to exclude." *Id.* at 4. In an effort to resolve the dispute without court

16  intervention, Apricorn offers that "If SPEX contends it needs another fact witness

17  from Apricorn, we will consider it if SPEX is willing to agree to drop its

18  objection." *Id.* at 2. To Apricorn's knowledge, SPEX did not agree to drop its

19  objection and thus apparently wanted to both (a) take another deposition of

20  Apricorn and (b) preserve SPEX's objection to exclude Apricorn's noninfringing

21  alternatives.

22       *March 16, 2019*: Consistent with his preparation of "Design Option 13" for

23  Apricorn's interrogatory response, Dr. Jones discloses in his opening expert report

24  his agreement with this design option. Dkt. 168-10 at 308 ("I have read Apricorn's

25  second supplemental responses to SPEX's Interrogatory No. 3, including the design

26  options presented. It is my opinion that such design options would not infringe the

27  Asserted Claims of the Asserted Patents for the reasons stated.").

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

5

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

*March 16, 2019*:  Relying on SPEX's technical expert opinions on noninfringing alternatives, SPEX's own damages expert also addressed Apricorn's noninfringing alternatives in his opening expert report as a consideration in his *Georgia-Pacific* reasonable royalty analysis.  Dkt. 168-15 at 106-107, ¶¶ 293-296.

*March 23, 2019*:  Although not acknowledged by SPEX's motion to strike, SPEX's own technical expert analyzed Apricorn's noninfringing alternatives in his opening expert report, including "Design Option 13", in his own expert report. Bright Decl. Ex. 1 at 94-96, ¶¶ 253-254 ("Devices lacking a mediating means would also pose significant risk absent any hardware that would ensure that data must first pass through the security means … Design Options 2, & 4-11, 13-14 are also insufficient …").  SPEX's own technical expert also analyzed software as a noninfringing alternative in his opening expert report.  *Id.* at 94, ¶ 252 ("… hardware encryption is superior to software encryption because it is faster, provides higher levels of security, and is much harder to hack …").

*April 19, 2018*:  Further, consistent with SPEX's admission of the noninfringing alternative of "software"  versus "hardware" encryption early in the case (Dkt. 27 at 20:14-17), Dr. Jones identified another "Initio chip design ... [that] would no longer include an AES hardware unit … Instead, the [chip] … would perform the encryption/decryption via software …"  Dkt. 178-4 at 82-83, ¶ 194. This followed Dr. Jones' observation of SPEX's admission regarding noninfringing alternatives early in the case (Dkt. 27) and Apricorn's interrogatory responses identifying those alternatives (Dkt. 168-4 at 14:12-15).  Dkt. 178-4 at 80, ¶ 192 ("'SPEX has admitted in this case that there are purportedly commercially acceptable and available noninfringing alternatives to the Accused Products with respect to the patents-in-suit (see SPEX's Document No. 27 filed in this case).'").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

6

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

**B.**   **Meanwhile during fact discovery, SPEX refuses to answer Apricorn's discovery on SPEX's real infringement theory for the "means for mediating …"**

Apricorn's good faith effort to discharge its duty (if any) to provide discovery on noninfringing alternatives with less than adequate information from SPEX must be considered in the context of SPEX's failure to disclose its real infringement theories, including for the "means for mediating …" term in the remaining asserted claims of the '802 patent.  The timeline below reveals SPEX's failure to disclose its infringement theory following the Court's claim construction order until SPEX's opening expert report.

*November 1, 2017*:  Apricorn serves an interrogatory seeking SPEX's real infringement theory on the "means for mediating …" term.  Bright Decl. Ex. 2 at 7 (Interrogatory No. 9) ("Considering the Court's Order Regarding Claim Construction in this case, explain the basis for SPEX's contention, if any, including the evidentiary basis, that the following is in Apricorn's Accused Instrumentalities: 'the exchanged data must first sass [sic: pass] through means for performing the one or more security operations.'").

*December 5, 2017*:  SPEX refuses to fully answer Apricorn's interrogatory.  Bright Decl. Ex. 3 at 21-22 ("It is unclear and ambiguous as to what Apricorn means by the clause 'Considering the Court's Order Regarding Claim Construction in this case.' Subject to and without waiving the foregoing objections, SPEX responds as follows: SPEX refers Apricorn to its operative infringement contentions.").

*December 5, 2017*:  The same day that SPEX refuses to fully answer Apricorn's interrogatory, SPEX serves its second amended infringement contentions which do not fully answer Apricorn's interrogatory but instead essentially re-arrange the words of the claim.  Dkt. 120-1 at 14-18 ("Apricorn's Accused Instrumentality meets this limitation. For example, interface control

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

7

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

hardware on this device ensures that all data that is passed to its storage drive (i.e., the target means) from the host computer is encrypted … All data between the host computer and the memory must be mediated such that it passes through the security means to be encrypted or decrypted …"). Nowhere does SPEX's infringement contentions rely, for example, on USB specifications for this claim element. *Id.*

*January 16, 2018*: Apricorn objects to SPEX's refusal to fully answer Apricorn's interrogatories. Bright Decl. Ex. 4 at 32:21-28 ("SPEX has chosen to avoid answering interrogatories Apricorn served to try to get clarity on SPEX's infringement allegations, including Apricorn's first set of interrogatories to SPEX (Interrogatory No. 1) and second set of interrogatories to SPEX (Interrogatory Nos. 2-11). Meanwhile, SPEX has kept its infringement contentions vague after the Court's claim construction order. SPEX's interrogatory responses and amended infringement contentions remain deficient, which hinders Apricorn's deposition preparations.").

*March 16, 2018*: For the first time, through SPEX's opening expert report, SPEX discloses its reliance on publicly available USB specifications including for the "means for mediating …" term. *E.g.*, Dkt. 111-1 at 64-68, ¶¶ 163-172.

## III.   LEGAL STANDARD

SPEX's motion cites a single case for the proposition that "Apricorn bears the burden on noninfringing alternatives" and was "required to disclose any expert testimony regarding alleged non-infringing alternatives in its opening expert reports." Dkt. 168-1 at 5:25-27 (citing *Smart Skins, LLC v. Microsoft Corp.*, No. C15-554-MJP, 2016 WL 4148091 at *2 (W.D. Wash. July 1, 2016)). The law is far from clear on this topic and other courts have reached a different conclusion, as the patent owner bears the burden to prove damages. *See, e.g., Papst Licensing GMBH & Co., KG v. Samsung Electronics Co., Ltd. et al.*, Case No. 6:18-CV-00388-RWS, Dkt. 229 at 2 (E.D. Tex. Oct. 25, 2018) ("Papst's motion to exclude any reference to non-infringing alternatives because Samsung's expert witness, Dr. Wolfe, did not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

8

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

1   include them in his opening expert report is also DENIED. Samsung may present

2   Dr. Wolfe's non-infringing alternatives opinions contained in his rebuttal expert

3   report but may not offer any previously undisclosed non-infringing alternative

4   opinions.").

5       In any event, as further discussed below, Apricorn timely disclosed

6   noninfringing alternatives during fact discovery and in an opening expert report as

7   well as a rebuttal expert report.

8   **IV.   ARGUMENT**

9       **A.   Apricorn discharged its duty (if any) to timely disclose**

10          **noninfringing alternatives during fact discovery.**

11      From early in the case, SPEX admitted to two categories of noninfringing

12  alternatives, including alternatives that arise out of options to the "mediating

13  means."  Dkt. 27 at 20:17-19 ("As another example, devices without mediating

14  means, such as those in the prior art, would not practice a number of the claims.").

15  About one year before the close of fact discovery, Apricorn disclosed its reliance on

16  SPEX's admissions of noninfringing alternatives in an interrogatory response.  Dkt.

17  168-4 at 14:12-15 ("SPEX has admitted in this case that there are purportedly

18  commercially acceptable and available non-infringing alternatives to the Accused

19  Products with respect to the patents-in-suit (see SPEX's Document No. 27 filed in

20  this case).").[2]  Subsequently to Apricorn's interrogatory response, SPEX never

21  asked Apricorn's Rule 30(b)(6) designee about that alternative admitted by SPEX

22  as disclosed in Apricorn's interrogatory response.  Dkt. 168-4 at 14:12-15.  About

23  ten days before opening expert reports were due, as prepared by Apricorn's expert

24  (Dr. Jones), Apricorn further explained the grounds for its nonfringing alternatives

---

[2] There was no "gamesmanship" by Apricorn, contrary to SPEX's allegation. Dkt. 168-1 at 11:1-2. But it is curious that SPEX asked about the "software" noninfringing alternative at Apricorn's Rule 30(b)(6) deposition, and yet did not ask about SPEX's other admitted noninfringing alternative to a "mediating means," when the source of disclosure of both was in Apricorn's March 2017 interrogatory response well before Apricorn's Rule 30(b)(6) deposition. Dkt. 168-4 at 14:12-15; Dkt. 27 at 20:12-19.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

9

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

previously admitted by SPEX and disclosed by Apricorn.  Dkt. 178-2 at 13:21-28.

Despite SPEX's refusal to fully answer Apricorn's infringement interrogatories and SPEX's failure to question Apricorn's Rule 30(b)(6) deponent on SPEX's admitted second category of noninfringing alternative (lacking a "mediating means"), Apricorn acted reasonably in supplementing its interrogatory responses to essentially provide its expert opinions through fact discovery.  *See also Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*, No. CIV. 10-3785 SRN/JJK, 2012 WL 3612035, at *5-7 (D. Minn. Aug. 21, 2012) (non-infringing alternative disclosed even after the close of fact discovery permitted where the non-infringing alternative arose as a result of patent owner expert's deposition).

SPEX apparently waited nine days until the day before opening expert reports were due to complain to Apricorn and only to threaten a motion to exclude. *Compare* Dkt. 168-9 at 3 (email from SPEX's counsel dated March 15, 2018) *with* Dkt. 178-2 at 14 (Apricorn's interrogatory responses dated March 6, 2018).  SPEX was not looking to resolve the dispute without court intervention.  Still, Apricorn raised another Apricorn deposition in exchange for SPEX dropping its objection but SPEX did not take this up.  Dkt. 168-9 at 2.

> **B.**  **Apricorn timely disclosed expert opinions regarding noninfringing alternatives in expert reports and SPEX's own experts address the noninfringing alternatives.**

Apricorn's expert, Dr. Jones, prepared Apricorn's noninfringing alternatives as disclosed in Apricorn's interrogatory responses.  Dkt. 178-2 at 13:21-28.  Indeed, noninfringing alternatives are properly the subject of expert discovery and testimony.  They require a technical analysis to reach the legal conclusion that an alternative is, in fact, noninfringing.

Then in his opening expert report, Dr. Jones opined about those alternatives including "Design Option 13".  Dkt. 168-10 at 308.  Then again in his rebuttal expert report, Dr. Jones opined about the same "Design Option 13".  Dkt. 178-4 at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

10

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

75-76. The commonality among all of these disclosures regarding SPEX's first admitted category of noninfringing alternative is illustrated below regarding a noninfringing alternative which does not require the data to "first pass" through a "means for mediating …", i.e., without a "mediating means":

| SPEX's admission in Dkt. 27 at 20:17-19 (emphasis added) (disclosed in Apricorn's March 17, 2017 interrogatory response (Dkt. 168-4 at 14:12-15)). | Apricorn's March 6, 2018 interrogatory response (Dkt. 178-2 at 13:21-28) (emphasis added) as prepared by Dr. Jones and adopted by Dr. Jones' opening expert report (Dkt. 168-10 at 308) | Dr. Jones' rebuttal report (Dkt. 178-4 at 75-76, ¶ 189) (emphasis added) |
|---|---|---|
| "As another example, devices **without mediating means**, such as those in the prior art, would not practice a number of the claims." | "Design Option 13" which recites that "Apricorn could employ a hardware architecture in which **'data' isn't required to first pass** through a security module or means …" | "Design option 13: "Apricorn could employ a hardware architecture in which **"data" isn't required to first pass** through a security module or means (or similar claim language, including "prevent direction communication with the host computing device") …" |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

11

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

Similarly, the commonality of discovery regarding another "Initio chip design" implementing "software" rather than "hardware" encryption (SPEX's other admitted noninfringing alternative category) can be seen below:

| SPEX's admission in Dkt. 27 at 20:14-17 (emphasis added) (disclosed in Apricorn's March 17, 2017 interrogatory response (Dkt. 168-4 at 14:12-15)). | Apricorn's March 6, 2018 interrogatory response (Dkt. 178-2 at 8:18-27) (emphasis added) as prepared by Dr. Jones and adopted by Dr. Jones' opening expert report (Dkt. 168-10 at 308) | Dr. Jones' rebuttal report (Dkt. 178-4 at 82-83, ¶ 194) (emphasis added) |
|---|---|---|
| "For example, the security functionality could be (and is in many non-accused products) implemented in **software** rather than hardware. Such a device would not meet the security means limitation of the claims of the patents-in-suit." | "… the security functionality could be (and is in many non-accused products) implemented in **software** rather than hardware …" | Dr. Jones identified another "Initio chip design ... [that] would no longer include an AES hardware unit … Instead, the [chip] … would perform the encryption/decryption via **software** …" |

Apricorn thus disclosed its noninfringing alternatives admitted by SPEX early in Apricorn's interrogatory responses before Apricorn's Rule 30(b)(6) deposition, in

1    an opening expert report by Apricorn's expert, and in rebuttal expert reports by

2    Apricorn's experts.[3]

3          There is no prejudice to SPEX.  Although not acknowledged by SPEX's

4    motion to strike, SPEX's own technical expert analyzed Apricorn's noninfringing

5    alternatives, including "Design Option 13", in his own expert report.  Bright Decl.

6    Ex. 1 at 94-96 ("Devices lacking a mediating means would also pose significant

7    risk absent any hardware that would ensure that data must first pass through the

8    security means … Design Options 2, & 4-11, 13-14 are also insufficient …").

9    SPEX's own technical expert also addressed the alternative of "software"

10    encryption versus "hardware" encryption, which relates to Apricorn's new software

11    for its Initio chip alternative.  *Id.* at 94, ¶ 252 ("As I discussed above, for example,

12    hardware encryption is superior to software encryption because it is faster, provides

13    higher levels of security, and is much harder to hack.").  Relying on SPEX's

14    technical expert, SPEX's own damages expert also addressed Apricorn's

15    noninfringing alternatives in his opening expert report as a consideration in his

16    *Georgia-Pacific* reasonable royalty analysis. Dkt. 168-15 at 106-107, ¶¶ 293-296.[4]

17          The only case cited by SPEX allegedly in support of SPEX's position to

18    strike is *Smart Skins*, 2016 WL 4148091 at *2.  Dkt. 168-1 at 12:9-12.  But the facts

19    and circumstances here are dramatically different.  In *Smart Skins*, through "rebuttal

20    expert reports" for the first time, the defendant referred to "non-infringing

21    alternative designs that had not been disclosed to Smart Skins in discovery."  2016

22    WL 4148091 at *1.  As was shown above, Apricorn gave fair notice of its reliance

23    on SPEX's admissions of noninfringing alternatives in March 2017, offered a

24    deposition witness in February 2018, supplemented its interrogatory responses in

25

26    [3] SPEX's argument that Apricorn's opening expert report is "entirely conclusory" is wrong and

27    incoherent with SPEX's argument about Apricorn's March 6, 2018 interrogatory responses,
which were prepared and adopted by Apricorn's expert. Dkt. 168-1 at 11:16-17.

28    [4] Apricorn did not "rob" SPEX's experts the chance of giving expert opinions on the
noninfringing alternatives, contrary to its claim.  Dkt. 168-1 at 12:15-16.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

13

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

March 2018, disclosed reliance on expert testimony for the alternatives in an opening expert in March 2018, and again disclosed that expert reliance in rebuttal expert report in April 2018.  Another major difference from the *Smart Skins* case is this.  In *Smart Skins*, the court also found that "[defendant's] argument that the expert testimony at issue can properly be characterized as rebuttal testimony unpersuasive, because the testimony goes beyond the scope of Mr. Dell's expert report and, therefore, cannot be rebuttal." *Id.* at *2.  In contrast, here, SPEX's own technical and damages experts addressed the noninfringing alternatives in opening expert reports and Apricorn's experts rebutted.  Bright Decl. Ex. 1 at 94-96.  *Smart Skins* is not controlling on the facts here.

Nor is *Smart Skins* controlling on the law.  Other courts have declined to exclude non-infringing alternatives even where an expert did not disclose the alternatives in the expert's opening report but rather in a rebuttal report.  *See, e.g.*, *Papst Licensing GMBH & Co., KG v. Samsung Electronics Co., Ltd. et al.*, Case No. 6:18-CV-00388-RWS, Dkt. 229 at 2 (E.D. Tex. Oct. 25, 2018) ("Papst's motion to exclude any reference to non-infringing alternatives because Samsung's expert witness, Dr. Wolfe, did not include them in his opening expert report is also DENIED. Samsung may present Dr. Wolfe's non-infringing alternatives opinions contained in his rebuttal expert report but may not offer any previously undisclosed non-infringing alternative opinions.").

Given Apricorn's efforts to give notice of its noninfringing alternatives repeatedly through fact discovery and expert discovery, the disagreement among the courts on the applicable law, and the lack of prejudice to SPEX, SPEX's motion to strike should be denied.

## C.    SPEX's complaints about the Apricorn fact witness identifications are meritless.

Regarding noninfringing alternatives, SPEX argues that Apricorn's technical expert (Dr. Jones) and Apricorn's damages expert (Dr. Leonard) "cannot even

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

14

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

pinpoint the specific employee or employees who provided this [noninfringing alternatives] information." Dkt. 168-1 at 8:21-23 (citing Dkt. 168-12 at 28:25-29:8, 31:14-18, 37:9-12, and 53:11-14). At page 28 of Dr. Leonard deposition transcript, the following occurs:

> Q. So in footnote 57 you cite a conversation with Dr. Jones and Apricorn. Who specifically from Apricorn are you referring to in that footnote?
>
> A. ***It would be the individuals that we went over earlier***.
>
> Q. All of the individuals?
>
> A. I think they were all on the phone. I don't know if I can recall who would specifically speak to a particular issue.

Dkt. 168-12 at 28:25-29:8 (emphasis added). As Dr. Leonard testified earlier in his deposition, he identified the Apricorn individuals with whom he spoke about nonfringing alternatives along with Dr. Jones.

> Q. You can turn to Page 7 of your report, Paragraph 9.
>
> A. Okay.
>
> Q. So you mentioned here in Paragraph 9 a discussion with Apricorn - - or Apricorn employees occurring on April 17, 2018?
>
> A. Yes.
>
> Q. You mentioned Paul Brown, Mike McCandless, Roy Younggren and Dave Knott. Did you speak to them separately or at the same time?
>
> A. At the same time.
>
> Q. Did you speak to them by phone?
>
> A. Yes.

Bright Decl. Ex. 5 at 12:20-13:7. As Dr. Leonard testified as shown above, page 7 of his report, paragraph 9 identifies the Apricorn individuals with whom Dr. Leonard spoke about noninfringing alternatives.

I have also had discussions with Apricorn employees, including Paul Brown, the President of Apricorn, Mike McCandless, the VP of Sales and Marketing at Apricorn, Roy Younggren, the VP of Engineering at Apricorn, and Dave Knott, VP of Operations, ("Conversation with Apricorn") as well as Apricorn's technical expert Dr. Mark Jones. These discussions took place on April 17, 2018.

Bright Decl. Ex. 6 at 7.  Similarly, Dr. Jones' expert report identifies the same Apricorn individuals.  Dkt. 178-4 at 75 fns. 233-235 and at 82 fns. 264-265 ("Discussions with Apricorn, including Paul Brown, Roy Younggren, and Mike McCandless on April 13 and 17, 2018.").  Mr. Brown was Apricorn's Rule 30(b)(6) designee on noninfringing alternatives, as previously mentioned, and SPEX took his deposition as well as the depositions of Mr. Younggren and Mr. McCandless, who were also Rule 30(b)(6) designees for Apricorn (on other topics, including technical and marketing topics).

SPEX's argument that Dr. Leonard and Dr. Jones could not identify the Apricorn individuals with whom they spoke about noninfringing alternatives is meritless.

## V.   CONCLUSION

For the foregoing reasons, SPEX's motion to strike Apricorn's noninfringing alternatives should be denied.

Dated:  December 23, 2019

Respectfully submitted,

*Christopher D. Bright*
Christopher D. Bright
christopher.bright@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard, Ste. 1800
Costa Mesa, CA 92626
Tel: 714.830.0600
Fax: 714.830.0700

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

16

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

1  |  HERSH MEHTA (*admitted pro hac vice*)
2  |  hersh.mehta@morganlewis.com
   |  MORGAN, LEWIS & BOCKIUS LLP
3  |  77 West Wacker Drive
   |  Chicago, IL 60601
4  |  Tel: 312.324.1739
   |  Fax: 312.324.1001
5  |
6  |  Attorneys for Defendant APRICORN
7  |
8  |
9  |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

17

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)

CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2019, I electronically filed the foregoing document **APRICORN'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE APRICORN'S NONINFRINGING ALTERNATIVES PURSUANT TO RULE 37(C)(1)** with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system, which constitutes service on all counsel of record to this action.

Executed on December 23, 2019, at Costa Mesa, California.


     /s/ *Christopher D. Bright*     
CHRISTOPHER D. BRIGHT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 37976443.5

18

APRICORN'S OPP TO PLAINTIFF'S
MOTION TO STRIKE
CASE NO. 2:16-CV-07349 JVS (ARGx)