UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Denying Previously-Deferred Portions of Apricorn's Noninfringement Summary Judgment Motion**

Plaintiff SPEX Technologies, Inc. ("SPEX" or "Plaintiff") sued Apricorn, Inc. ("Apricorn" or "Defendant"), along with certain other defendants, for patent infringement. Docket No. 1. After the parties filed various summary judgment motions and a hearing was held, SPEX and Apricorn were directed to file supplemental briefs regarding Apricorn's Motion for Summary Judgment of Noninfringement. Docket No. 93 (notice) 105 (memorandum in support); see also SPEX Opp'n, Docket Nos. 123 (redacted), 122-1 (sealed); Apricorn Reply, Docket No. 127. Specifically, the parties were asked to provide their positions regarding the proper interpretation of certain claim terms that were the subject of Apricorn's noninfringement arguments. The parties timely filed their supplemental briefs. See SPEX Op. Supp. Br., Docket No. 145; Apricorn Op. Supp. Br., Docket Nos. 146 (public), 148 (sealed); SPEX Resp. Supp. Br., Docket No. 153; Apricorn Resp. Supp. Br., Docket No. 149.

The previously-deferred portions of Apricorn's Motion for Summary Judgment of Noninfringement (see Docket Nos. 93, 105; see also 142 (order regarding other portions of motion)) are **DENIED**.

## I. BACKGROUND

SPEX currently asserts Claims 1, 2, 11, and 12 ("Asserted Claims") of U.S. Patent No. 6,088,802 ("the '802 Patent") against Apricorn. See Docket No. 83 (Court granting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

parties' stipulation of dismissal with prejudice of claims of infringement, invalidity, and unenforceability related to U.S. Patent No. 6,003,135); see also Docket No. 103 at 1 (SPEX's Motion for Summary Judgment of No Invalidity).

The '802 Patent is titled "Peripheral Device with Integrated Security Functionality" and issued on July 11, 2000. The '802 Patent relates to devices that can communicate with host computing devices to provide various operations, including security operations. See '802 Patent at Abstract. The Asserted Claims recite:

1.  A peripheral device, comprising:
    security means for enabling one or more security operations to be performed on data;
    target means for enabling a defined interaction with a host computing device;
    means for enabling communication between the security means and the target means;
    means for enabling communication with a host computing device;
    means for operably connecting the security means and/or the target means to the host computing device in response to an instruction from the host computing device; and
    means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means.

2.  A peripheral device as in claim 1, wherein the target means comprises means for non-volatilely storing data.

11. A peripheral device, comprising:
    security means for enabling one or more security operations to be performed on data;
    target means for enabling a defined interaction with a host computing device;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

> means for enabling communication between the security means and the target means;
> means for enabling communication with a host computing device; and
> means for mediating communication of data between the host computing device and the target means so that the communicated data must first pass through the security means.
>
> 12. A peripheral device as in claim 11, wherein the target means comprises means for non-volatilely storing data.

'802 Patent, Claims 1, 2, 11, 12.

## II. LEGAL STANDARDS

### A. Claim Construction Principles

Claim construction is "exclusively within the province of the court." Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction "must begin and remain centered on" the claim language itself. Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). But extrinsic evidence may also be consulted "if needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances general purpose dictionaries may be helpful." <u>Id.</u> at 1314 (internal citation omitted). In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." <u>Id.</u> Then "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." <u>Id.</u> (internal quotation marks omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." <u>Id.</u> (internal quotation marks omitted).

But it is improper to read limitations from the specification into the claim. <u>Callicrate v. Wadsworth Mfg., Inc.</u>, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.") (quoting <u>Phillips</u>, 415 F.3d at 1312). A court does "not import limitations into claims from examples or embodiments appearing only in a patent's written description, <u>even when a specification describes very specific embodiments of the invention</u> or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" <u>JVW Enters., Inc. v. Interact Accessories, Inc.</u>, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations omitted) (emphasis added).

**B.     Summary Judgment**

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant,[1] indicates "that there is no genuine dispute as to any

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[2]; see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005). The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). If, and only if, the moving party meets its burden, then the non-moving party must produce specific evidence to rebut the moving party's claim and create a genuine dispute of material fact. MEMC, 420 F.3d at 1373; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the non-moving party meets this burden, then the motion will be denied. See generally Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001).

**C.     Patent Infringement**

"Summary judgment of non-infringement requires a two-step analytical approach. First, the claims of the patent must be construed to determine their scope." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999). This is a question of law. Id. Second, following claim construction, the fact finder compares the construed claims to the accused device or process. Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002). "To prove infringement, the patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents." Id. "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim. Infringement under the doctrine of equivalents requires the patentee to prove that the accused device contains an equivalent for each limitation not literally satisfied." Id. (internal citations omitted).

"Summary judgment of non-infringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." Telemac Cellular Corp. v. Topp

---

'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

    [2] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001) (internal citations omitted). "A patentee ordinarily bears the burden of proving infringement." Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct. 843, 846 (2014).

## III. ANALYSIS

### A. Claim Construction Considerations

1. "enabling" ('802 Patent, Claims 1, 11)

| SPEX's Construction | Apricorn's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning, i.e., "making something possible, regardless of how that is done" (see SPEX Op. Supp. Br. at 1; see also Apricorn Resp. Supp. Br. at 1) | "performing" or "participating in the performance of" (see Apricorn Op. Br. at 2; see also Apricorn Resp. Supp. Br. at 1) | No construction |

The asserted independent claims include multiple "means for enabling" limitations. For example, Claim 1 of the '802 Patent includes the following "means for enabling" phrases:

- "security means for enabling one or more security operations to be performed on data;"
- "target means for enabling a defined interaction with a host computing device;"
- "means for enabling communication between the security means and the target means;" and
- "means for enabling communication with a host computing device."

See '802 Patent, Claim 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

Of particular relevance for the parties' summary judgment disputes is the "target means for enabling . . ." claim term, which appears in both Claims 1 and 11. The parties agreed during claim construction proceedings that the phrase "target means for enabling a defined interaction with a host computing device" should be construed as:

Subject to 35 U.S.C. § 112 ¶ 6

Recited Function: "enabling a defined interaction with a host computing device"

Structure: (1) a memory module adapted to enable non-volatile storage of data; (2) a communications module adapted to enable communications between the host computing device and a modem or LAN transceiver; (3) a smart card reader; (4) biometric device; or (5) equivalents thereof.

Docket No. 44 at 3–4. The Court also previously construed the term "defined interaction" within the "target means for enabling . . ." claim term as "an interaction [with a host computing device] that can provide one or more of a variety of functionalities." Claim Const. Order, Docket No. 62 at 10. The Court found a functionality itself is not a defined interaction.

In their supplemental briefs, the parties appear to agree that "enabling" covers circumstances where, for instance, a defined interaction is either directly or indirectly "enabled" by a "target means." See, e.g., Apricorn Resp. Supp. Br. at 5–6. But the parties dispute whether "enabled" includes more passive circumstances where the "target means" simply makes the defined interaction possible, or more active circumstances where the "target means" must somehow participate in the performance of the defined interaction.

The parties' agreed structures for the "target means . . ." term largely come from a portion of the patent specification from column 13, line 27 to column 15, line 40. The parties agree, for instance, that a biometric device may be a "target means," and the '802

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

Patent discusses various types of biometric devices, including fingerprint scanning devices, for "enabl[ing] user authentication to a host computing device before allowing access to particular data stored on the host computing device." See '802 Patent at 14:50–52. In one revealing passage, the specification states:

> [i]t may be useful to make the peripheral device relatively long, so that a portion of the [fingerprint scanning device] card on which the sensor is positioned can extend from the slot of the host computing device, thereby ***enabling fingerprints to be scanned while the peripheral device is inserted in the host computing device***.

Id. at 14:62–67 (emphasis added).

This use of the term "enabling" in this context supports Plaintiff's interpretation. The specification states that it is simply the shape of the fingerprint scanning device that "enables" a defined interaction (receipt of scanned fingerprints) to provide a functionality (user authentication) between the scanning device and the host computing device. At least as explained in this passage, the fingerprint scanning device does not have to actively do anything additional to "enable fingerprints to be scanned" for eventual user authentication. This interpretation is also consistent with the plain claim language in general, as well as the parties' agreed structures for the "target means" term. For instance, the parties agree that "a memory module adapted to enable non-volatile storage of data" is a corresponding structure for the claimed "target means." In this context, it appears that "enabling" non-volatile data storage simply refers to whether the memory module itself has been programmed or structured to permit non-volatile data storage. Similar could be said for the "communications module."

For the disclosed target means structures, certain passages of the specification assert,

> [t]he construction and operation of [the target means structure] in general, as well as those identified particularly above, is well understood by those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
|---|---|---|---|
| Title | SPEX Tech., Inc. v. Apricorn | | |

skilled in the art, so that, together *with an understanding of the required communication capability* between the target functionality and the interface control device, a [target means structure] for use with the invention can be easily constructed and operated.

See, e.g. '802 Patent at 13:42–44, 13:62–14:2, 14:33–40 (emphasis added). These passages suggest that the "target means for enabling a defined interaction with a host computing device" at least requires the target means structure to be able to "communicate," directly or indirectly, with other components so that the collective system components can have an interaction with the computing device that leads to the performance of a particular functionality. But the intrinsic record does not support the conclusion that this "communication" requires active work on the part of the target means, as opposed to the target means simply being programmed so that it is compatible with its connected components and information can be transmitted (a "defined interaction" to provide for a functionality can occur) with the computing device.

Defendants' position would appear to require something more. Defendants argue that "enabling a defined interaction" requires that the "target means" "must be involved in the defined interaction with the host computer." Apricorn Resp. Supp. Br. at 3; see also id. at 6. As a general proposition, the idea that an end component (for instance, a memory module) is "involved in the defined interaction" may be true insofar as the memory module will ultimately perform the functionality of storing data, even if the data arrives at the module based on "middle man" components communicating to permit an indirect "interaction" between the computing device and the target means. Indeed, the patent itself refers to communication capability between the target functionality and the interface control device, not necessarily directly between the target means and the computing device. See, e.g. '802 Patent at 13:42–44. To the extent Apricorn would argue for something more from, for instance, the memory module in its relationship to the computing device, Apricorn has not shown that its position is supported by the intrinsic record. Instead, the claimed function for the target means is met by virtue of the target means' ability to provide certain functionalities and be part of the overall system of components in communication with the computing device.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
|---|---|---|---|
| Title | SPEX Tech., Inc. v. Apricorn | | |

Based on this analysis, the term "enabling" is not construed. Apricorn has not shown that it is used in the specification inconsistently with its plain and ordinary meaning, which is broader than Apricorn's proposal requiring active performance or participation in the performance of an action.

2. "instruction" ('802 Patent, Claim 1)

| SPEX's Construction | Apricorn's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning (see SPEX Op. Supp. Br. at 8) | "explicit instruction" (see Apricorn Op. Supp. Br. at 9–10) | |

Apricorn's opening supplemental brief argues that the term "instruction" as it appears in Claim 1 of the '802 Patent is limited to an "explicit instruction." Apricorn bases its position on statements made many years after the issuance of the '802 Patent during *inter partes* review ("IPR") proceedings for a different patent owned by SPEX. Apricorn asserts that the patent subject to the later IPR proceedings is a related patent, cited and incorporated in the '802 Patent by reference.[3]

Apricorn's responsive supplemental brief does not further address the term "instruction" or respond to the arguments about the term made in Plaintiff's opening supplemental brief. As Plaintiff persuasively notes, different claim limitations were being addressed in the IPR proceedings compared to the claim limitation at issue in the '802 Patent, including two separate communication steps rather than the single communication step at issue here. See, e.g., Patent Owner Preliminary Response During IPR Proceeding No. IPR2018-00084, Docket No. 145-11 at 21. The Court otherwise agrees with Plaintiff that the statements made during the IPR proceedings do not clearly and unequivocally limit the term "instruction" as it appears in the '802 Patent claims to

---

[3] During claim construction, the Court rejected the argument that the other patent was properly incorporated by reference into the '802 Patent, including because the '802 Patent does not refer to it by application number or patent number. See Claim Const. Order at 41–42; see generally id. at 39–43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-07349 JVS (AGRx) | Date | January 7, 2020 |
| Title | SPEX Tech., Inc. v. Apricorn | | |

require an "explicit instruction." Apricorn's request to limit the meaning of this claim term is also rejected.

### B. Apricorn's Motion for Summary Judgment of Noninfringement

Apricorn's positions in the deferred portions of its motion for summary judgment of noninfringement are based on narrowed interpretations of the two claim terms addressed by this Order. See, e.g. Docket No. 142 at 19. Because Apricorn's claim construction positions have been rejected, its noninfringement arguments fail for the same reasons. Based on the meaning of the claim terms as properly interpreted, factual questions preclude a summary judgment determination on the record presented at this time.

### IV. CONCLUSION

The previously-deferred portions of Apricorn's Motion for Summary Judgment of Noninfringement (see Docket Nos. 93, 105; see also 142 (order regarding other portions of motion)) are **DENIED**.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |